[No. 19142-0-I. Division One. December 19, 1988.]

*In the Matter of* A.W.

THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent,* v. NORMAN JOHNSON, *Appellant.*

*Rita Griffith* of *Washington Appellate Defender Association,* for appellant.

*Deborra Garrett,* as guardian ad litem.

*Kenneth O. Eikenberry, Attorney General,* and *Dennis Kole, Assistant,* for respondent.

WINSOR, J.—Norman Johnson appeals from an order terminating his parental relationship with A. Johnson alleges denial of procedural due process and insufficient evidence, and challenges the constitutionality of RCW 13.34.180(1) and (2). We affirm.

A. was born in May 1983, to Devina Wallace and an unidentified father, later established to be Johnson. Johnson and Wallace had resided together periodically since 1979, and were well known to police and social agencies for their domestic problems and substance abuse.

On October 5, 1983, the Department of Social and Health Services (DSHS) filed a dependency petition in A.'s behalf. The petition alleged that A.'s father was unknown; and that A. was dependent in that he had no parent, guardian, or custodian capable of adequately caring for him, such that he was in danger of suffering substantial damage to his psychological or physical development. The dependency petition was prompted by a domestic incident in which Wallace stabbed Johnson. Wallace was subsequently jailed, Johnson was hospitalized, and A. was taken into protective custody.

A.'s dependency hearing was set for November 14, 1983. The court issued a summons to Johnson identifying him as A.'s "putative father." Pursuant to a court order allowing service under RCW 13.34.080, service on Johnson was made by publication. The summons and a copy of the petition were sent by certified mail addressed to Johnson's last known address, Wallace's residence.

Wallace and her attorney appeared in court on November 14, and requested a continuance. Johnson was not present. The trial court granted the continuance, and by order dated December 8, 1983, reset A.'s dependency hearing for December 14, 1983. There is no evidence in the record that the new hearing date was announced in open court, or that Johnson was notified of the continuance. Johnson did not attend the December 14 dependency hearing.

Testimony at the dependency hearing established that A. was healthy and well cared for, but that Wallace's and Johnson's relationship was violent and each was a drug or alcohol abuser. The court found A. dependent in that he had no parent or guardian capable or willing to adequately

care for him. The court also found that "there is residing in this child's home someone who could be violent and dangerous." A disposition order was entered which allowed A. to remain with Wallace, provided Wallace and Johnson received counseling and participated in drug and alcohol abuse programs.[1] To that end, beginning in December 1983, DSHS offered Johnson casework services and assisted him in securing treatment for his alcohol and anger management problems.

Johnson, Wallace, and A. remained together for only a short time. As a result of Johnson's and Wallace's continuing problems, DSHS removed A. from the home and placed him in foster care in March 1984.

Johnson formally established his paternity as to A. in January 1985. He then was recognized as a party to A.'s dependency, and received notice of all dependency proceedings. As a party, Johnson also received the assistance of appointed counsel.

In May 1985, Johnson and his attorney attended a dependency review hearing. The court ordered Johnson to participate in various alcohol treatment and anger control programs. At the next dependency review hearing, held in October 1985, Johnson's cooperation with DSHS was deemed unsatisfactory. Johnson was again ordered to obtain counseling and treatment for alcohol abuse.

Apparently, Johnson's compliance with the treatment provisions of the October order was also unsatisfactory. On January 27, 1986, DSHS filed a petition to terminate Johnson's and Wallace's parental rights. Among the reason given as a basis for termination were Johnson's and Wallace's inability to make significant, lasting improvement in their drug and alcohol problems, and their continued chaotic lifestyles.

The termination hearing was held in June 1986. After several days of testimony by Johnson, Wallace, social

---

[1]Johnson was not served with a copy of the disposition order.

workers, police officers, alcohol counselors and psychologists, the court ordered termination of Wallace's and Johnson's parental interest in A. A. was then 3 years old. Johnson appeals.

## NOTICE AND OPPORTUNITY TO BE HEARD

Johnson first contends that due to insufficient process, he did not receive adequate notice or have an opportunity to be heard when A.'s dependency was found, or at the dependency review proceedings held before he established paternity. Johnson argues that as a result, he was denied his due process rights. This issue is raised for the first time on appeal.

Where not inconsistent, the rules of civil procedure apply to juvenile proceedings other than those involving a juvenile offense. JuCR 1.4(a). We have previously held that CR 12(h)(1), which provides that a defense of lack of personal jurisdiction, improper venue, insufficient process, or insufficient service of process is waived if not timely made, applies to dependency proceedings. *State v. Norlund,* 31 Wn. App. 725, 726, 644 P.2d 724 (holding that a runaway child waived objection to the court's jurisdiction over her by not raising the issue at dependency review hearings), *review denied,* 98 Wn.2d 1013 (1982). We adhere to our holding in *Norlund,* and note that it is particularly appropriate to strictly apply the waiver provisions of CR 12(h)(1) in dependency and termination proceedings. Parties, attorneys, and the court have an obligation to expedite resolution of child custody and parental rights issues, and to thereby limit the period during which children face an uncertain future. It is therefore of paramount importance that the trial court be apprised of alleged errors so that it can make corrections, if necessary, and thereby avoid an appeal and consequent new proceeding. *See State v. Scott,* 110 Wn.2d 682, 685, 757 P.2d 492 (1988).

The instant case demonstrates the need for strict application of CR 12(h)(1). Johnson's belated challenge to the process afforded him, and his delay in filing an appellate

brief, have resulted in A. spending an additional 2½ years in foster care. A., who was found dependent as an infant, and who was 3 when Johnson's parental rights were terminated by the trial court, is now more than 5½ years old. We find this delay in resolving A.'s future intolerable, and hold that one who participates as a party in at least some dependency review hearings and in the termination adjudication waives appellate review of venue, process, and personal jurisdiction challenges not timely raised in the trial court.

Johnson seeks to avoid this result by couching his challenge in due process terms. With few exceptions, we will not consider error raised for the first time on appeal. RAP 2.5(a). This rule applies to termination proceedings as well as to criminal and civil matters. *In re Roberts,* 46 Wn. App. 748, 756, 732 P.2d 528 (1987); *see In re Young,* 24 Wn. App. 392, 396–97, 600 P.2d 1312 (1979). However, errors of constitutional magnitude may be raised for the first time in the appellate court. RAP 2.5(a)(3). Through his due process arguments, Johnson seeks to elevate his challenge into this constitutional realm.

 We have considered Johnson's arguments and hold that even if error did initially affect his due process rights, such error was harmless beyond a reasonable doubt as a result of Johnson's subsequent participation in dependency review hearings and the termination adjudication.[2]

The primary purpose of a dependency adjudication is to allow courts to order remedial measures to preserve and mend family ties, and to alleviate the problems which prompted the State's initial intervention. *Krause v. Catholic Comm'ty Servs.,* 47 Wn. App. 734, 744, 737 P.2d 280, *review denied,* 108 Wn.2d 1035 (1987); *In re Chubb,* 46 Wn. App. 530, 536, 731 P.2d 537 (1987) (quoting *In re A.M.D.,*

---

[2]In reaching this holding we do not make any determination as to whether Johnson received adequate notice of the 1983 dependency proceeding, nor do we determine what, if any, due process considerations a putative father is entitled to at the initial dependency hearing or at subsequent review hearings.

648 P.2d 625, 640 (Colo. 1982)); RCW 13.34.020, .130. This purpose was served in the instant case. Johnson was offered caseworker services beginning in December 1983. Despite the uncertain status of Johnson's relationship to A., court orders regarding the dependency provided for his treatment and counseling needs. Johnson does not allege ignorance of these treatment provisions.

Furthermore, any error which affected the dependency determination and review had no prejudicial effect on the subsequent termination of Johnson's parental rights. Unlike a termination of parental rights, a dependency determination is reversible, and does not sever all contacts between a parent and child. *Chubb,* 46 Wn. App. at 536. A dependency is a period during which parents have an opportunity to correct parental deficiencies. Their progress, and the dependent child's status, is judicially reviewed at least once every 6 months to determine whether the dependency should continue. RCW 13.34.130(4). This results in the court effectively making a new finding of dependency at each review hearing. *Norlund,* 31 Wn. App. at 726. Only if it is determined that the efforts to cure parental deficiencies have been unsuccessful and additional services will not remedy those deficiencies in the foreseeable future, will a termination petition be filed. *Krause,* 47 Wn. App. at 744; *see In re Moseley,* 34 Wn. App. 179, 186, 660 P.2d 315, *review denied,* 99 Wn.2d 1018 (1983); RCW 13.34.130(4), .180.

Here, Johnson was a party to the dependency for approximately 18 months before the court terminated his parental rights. His participation in review hearings effectively resulted in the court considering Johnson's parental fitness and finding A. dependent on at least two occasions. This alleviated any prejudice to Johnson resulting from his prior nonparticipation.

Any error is also made harmless by the nature of the termination hearing. At the termination hearing, the State had to prove by clear, cogent, and convincing evidence that parental deficiencies still existed which were not likely to

be remedied so that A. could be returned to Johnson in the near future. RCW 13.34.180(5); *Krause,* 47 Wn. App. at 742. This requirement is the substantial equivalent of requiring that a child's dependency be reestablished before parental rights may be terminated. *Krause,* 47 Wn. App. at 743. Because termination decisions are predicated upon present parental unfitness,

> at the time of the termination hearing the accuracy of the facts underlying the original dependency adjudication is not critical, and the risk of error in finding the underlying facts at the termination hearing is not of central importance.

*Krause,* 47 Wn. App. at 743; *accord, Chubb,* 46 Wn. App. at 536–37.

Here, Johnson's fitness to assume parenting responsibilities was the subject of extensive testimony at the termination hearing. The trial court made several findings of fact relating exclusively to Johnson's parental capabilities and his rehabilitation efforts. The termination was thus based upon Johnson's present parental capabilities and his inability to correct his problems during the dependency. Johnson's nonparticipation at the dependency hearing and 1984 dependency review hearings thus had no effect on the court's ultimate decision to terminate his parental rights. Because Johnson participated in dependency review hearings and in the termination adjudication, the purposes of a dependency were satisfied and his fitness to parent A. was judicially evaluated. We therefore hold that any procedural due process error affecting his participation at the dependency hearing was harmless beyond a reasonable doubt.

### STANDARD OF PROOF

Johnson next attacks the constitutionality of RCW 13.34.180 and .190(1), which permit a termination to be based in part upon a dependency established by a preponderance of the evidence. He argues that under *Santosky v. Kramer,* 455 U.S. 745, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982), a dependency must be established by clear and

convincing evidence. In *Santosky,* the Court held that parental unfitness must be established by clear and convincing evidence in termination proceedings.

■ Johnson's argument was considered and rejected in *Krause v. Catholic Comm'ty Servs., supra,* and *In re Chubb, supra.* We agree with the reasoning in *Krause* and *Chubb* that because a dependency is a preliminary, remedial, nonadversary proceeding, and because parental unfitness must be reestablished at the termination hearing, due process does not require application of the clear and convincing standard of proof at a dependency determination. *Krause,* 47 Wn. App. at 742–45; *Chubb,* 46 Wn. App. at 534–37.

Johnson argues, however, that because he was not a party to the original dependency proceeding, use of the preponderance standard violated his due process rights. We find this argument to be without merit. Johnson's participation as a party in 18 months of dependency review proceedings gave him ample opportunity to establish parental fitness, and his present parental capabilities were fully litigated at the termination hearing. Any constitutional deficiency caused by his absence from the dependency hearing had no effect upon the termination and was harmless beyond a reasonable doubt.

### SUFFICIENCY OF THE EVIDENCE

Johnson also attacks the sufficiency of the evidence upon which the termination order was based. RCW 13.34.180 and .190 permit entry of a termination order upon clear, cogent and convincing evidence:

(1) That the child has been found to be a dependent child under RCW 13.34.030(2); and

(2) That the court has entered a dispositional order pursuant to RCW 13.34.130; and

(3) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency under RCW 13.34.030)(2); and

(4) That the services ordered under RCW 13.34.130 have been offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided; and

(5) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future; and

(6) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home . . .

RCW 13.34.180(1)–(6). Johnson alleges insufficient evidence as to all but the third of these elements.

We do not address Johnson's contentions as to the sufficiency of evidence supporting the first and second elements, because these contentions were not raised at the termination proceeding. *See In re Fisher,* 31 Wn. App. 550, 552, 643 P.2d 887 (1982); RAP 2.5(a). We have examined the record in light of Johnson's remaining contentions and find them to be without merit.

In a termination proceeding, the trial court is afforded broad discretion and its decision is entitled to great deference on review. *In re Roberts,* 46 Wn. App. 748, 752, 732 P.2d 528 (1987). Thus, findings of the trial court will not be disturbed on appeal if they are supported by substantial evidence. *In re Sego,* 82 Wn.2d 736, 739, 513 P.2d 831 (1973). Here, substantial evidence supports the trial court's findings as to each of the statutory requirements.

Johnson attacks the sufficiency of the evidence as to the fourth element, concerning extension of all reasonably available corrective services, by focusing on one witness's statement that Johnson might have benefited from a halfway house program following a 60–day in–house alcoholism treatment program. An examination of the record reveals that Johnson received extensive counseling and treatment for his alcoholism and anger management problems. The speculative evidence relied on by Johnson is contradicted by the testimony of several witnesses that Johnson had

been offered all services reasonably available. We find this sufficient to uphold the trial court's finding that all reasonably available services had been offered.

The evidence is also sufficient to support the court's findings as to the fifth and sixth elements, concerning the likelihood that A. could be returned to Johnson in the near future, and the effect of continuation of the parent–child relationship on A.'s prospects for an early integration into a stable and permanent home. The thrust of Johnson's evidentiary arguments as to these factors is that testimony at the termination hearing established that he was highly motivated to rehabilitate himself and to create a home for A., and that he had made some progress toward these goals.

We have read the record, and find it does establish that Johnson cares for A., has never caused him physical harm, and is highly motivated to resume parental responsibilities at some future time. However, the record also contains ample testimony that despite Johnson's good motives, he has only a slight chance of achieving his goals in the foreseeable future. According to the testimony, Johnson is a chronic alcoholic who finds it extremely difficult to follow through with improvement plans. Johnson's recovery, if any, will take at least 1 to 3 years. Thus, if Johnson were to retain parental rights to A., his condition would delay A.'s integration into a stable and permanent home for at least 1 year, and perhaps indefinitely.

The period of time which constitutes the foreseeable future depends in part on the age of the child. *See In re Hall*, 99 Wn.2d 842, 851, 664 P.2d 1245 (1983). Although 1 year may not be a long time for an adult decision maker, for a young child it may seem like forever. We find that the trial court's findings as to the fifth and sixth elements are supported by substantial evidence.

The trial court here was faced with making a difficult decision. Although it is never easy to terminate parental rights, it is particularly difficult when the parent cares for the child and desires to be a good parent, as is the case

here. However, the overriding goal of a termination proceeding is to serve the child's best interests. *In re Aschauer,* 93 Wn.2d 689, 695, 611 P.2d 1245 (1980). The trial court was fully justified in finding that A.'s best interests were served by terminating Johnson's parental interest, rather than by leaving A. in the limbo of foster care for an indefinite period while Johnson sought to rehabilitate himself; a goal Johnson had been unable to achieve during the 2½-year dependency period.

We affirm the order terminating Johnson's parental rights in A.

SWANSON and PEKELIS, JJ., concur.

Reconsideration denied January 31, 1989.

Review denied at 112 Wn.2d 1017 (1989).