# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Welfare of | ) |
| | ) No. 72005-8-I (consolidated with |
| N.M.P.K.-A., | ) case Nos. 72006-6-I and 72007-4-I) |
| D.O.B.: 3/16/08; | ) |
| T.K.A., | ) DIVISION ONE |
| D.O.B.: 7/21/10; | ) |
| T.R.K.-A., | ) UNPUBLISHED OPINION |
| D.O.B.: 8/11/11, | ) |
| | ) |
| | ) |
| Minor children. | ) |
| | ) |
| STATE OF WASHINGTON, | ) |
| DEPARTMENT OF SOCIAL AND | ) |
| HEALTH SERVICES, | ) |
| | ) |
| Respondent, | ) |
| | ) |
| v. | ) |
| | ) |
| DEAN ALEXIS, | ) |
| | ) FILED: July 13, 2015 |
| Appellant. | ) |

TRICKEY, J. — Dean Alexis appeals the trial court's termination of his parental rights to his three children. He challenges several of the trial court's findings of fact. But substantial evidence in the record supports each of the court's findings. We affirm.

## FACTS

Dean Alexis is the father of N.M.P.K.-A. (born 3/16/2008), T.K.A. (born 7/21/2010), and T.R.K.-A. (born 8/11/2011). The children's mother is not a party to this proceeding.[1]

The Department of Social and Health Services (Department) first became

---

[1] The mother's parental rights were terminated on February 6, 2014.

involved in April 2012, after it had received referrals with allegations of negligent treatment toward the children. Law enforcement officers had conducted a welfare check on the residence after receiving a 911 hang up call. The officers noted concerns that the mother was under the influence of methamphetamine. The house was reported to be dirty and cluttered with clothing and toys. This was not the first time police officers had responded to the home. On many other occasions, officers had responded to the home finding the mother intoxicated. They had also discovered many people drinking alcohol there and engaging in disorderly conduct.

The Department filed a dependency petition on June 5, 2012. Alexis subsequently stipulated and agreed to the establishment of dependency.

Between September 2012 and March 2013, Alexis lived in Canada to pursue a job opportunity. Upon learning that the children were being placed in foster care, Alexis moved back to Washington, but was arrested and incarcerated for 11 days. Alexis returned to Canada in October 2013.

The Department filed a petition to terminate Alexis's parental rights on October 2, 2013. Alexis returned to Washington sometime in April 2014. After a termination hearing held in May 2014, the trial court terminated Alexis's parental rights.

Alexis appeals.

## ANALYSIS

Parents have a fundamental liberty interest in the care and welfare of their children. In re Dependency of Schermer, 161 Wn.2d 927, 941-42, 169 P.3d 452 (2007). To terminate parental rights, the Department must satisfy a two-pronged

2

test. In re Dependency of K.N.J., 171 Wn.2d 568, 576, 257 P.3d 522 (2011). The Department must first prove the statutory elements set forth in RCW 13.34.180(1)(a) through (f)[2] by clear, cogent, and convincing evidence. K.N.J., 171 Wn.2d at 576-77.

Evidence is clear, cogent, and convincing if it established the ultimate fact in issue as "'highly probable.'" In re Dependency of K.R., 128 Wn.2d 129, 141, 904 P.2d 1132 (1995) (internal quotation marks omitted) (quoting In re Sego, 82 Wn.2d 736, 739, 513 P.2d 831 (1973)). If the trial court finds that the Department

---

[2] RCW 13.34.180(1) states, in pertinent part:

A petition seeking termination of a parent and child relationship may be filed in juvenile court by any party, including the supervising agency, to the dependency proceedings concerning that child. Such petition shall conform to the requirements of RCW 13.34.040, shall be served upon the parties as provided in RCW 13.34.070(8), and shall allege all of the following unless subsection (3) or (4) of this section applies:

(a) That the child has been found to be a dependent child;

(b) That the court has entered a dispositional order pursuant to RCW 13.34.130;

(c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;

(d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. . . ;

. . .; and

(f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home. If the parent is incarcerated, the court shall consider whether a parent maintains a meaningful role in his or her child's life based on factors identified in RCW 13.34.145(5)(b); whether the department or supervising agency made reasonable efforts as defined in this chapter; and whether particular barriers existed as described in RCW 13.34.145(5)(b) including, but not limited to, delays or barriers experienced in keeping the agency apprised of his or her location and in accessing visitation or other meaningful contact with the child.

has met its burden under RCW 13.34.180, it may terminate parental rights if it also finds by a preponderance of the evidence that termination is in the "best interest" of the child. K.N.J., 171 Wn.2d at 577.

Where the trial court has weighed the evidence, our review is limited to determining whether the court's findings of fact are supported by substantial evidence and whether those findings support the court's conclusions of law. In re Dependency of P.D., 58 Wn. App. 18, 25, 792 P.2d 159 (1990). "'Substantial evidence' is evidence in sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." In re Welfare of T.B., 150 Wn. App. 599, 607, 209 P.3d 497 (2009) (quoting World Wide Video, Inc. v. City of Tukwila, 117 Wn.2d 382, 387, 816 P.2d 18 (1991)). The determination of whether the findings of fact are supported by substantial evidence "must be made in light of the degree of proof required." P.D., 58 Wn. App. at 25. In determining whether substantial evidence supports the trial court's findings, this court does not weigh the evidence or the credibility of witnesses. In re Dependency of E.L.F., 117 Wn. App. 241, 245, 70 P.3d 163 (2003).

Application of RCW 13.34.180(1)(f)

Alexis contends that the Department failed to prove, and the trial court failed to consider, the recent statutory amendments set forth in RCW 13.34.180(1)(f) pertaining to incarcerated parents. He asserts that the factors apply to parents who were in custody at some point during the dependency, regardless of whether they were incarcerated at the time of the termination hearing. In a recent decision of this court, In re Dependency of D.L.B., No. 72421-5-I (Wash. Ct. App. July __,

4

2015), we concluded that the amended factors only apply if the parent is incarcerated at the time of the termination hearing. Accordingly, we reject Alexis's contention.[3]

Current Unfitness and Little Likelihood that Conditions Would be Remedied

Alexis next challenges the trial court's determinations that he was currently unfit to parent his children and that there was little likelihood that conditions would be remedied so that his children could be returned to him in the near future. We disagree.

The Department must prove that the parent is currently unfit and "[t]hat there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future." RCW 13.34.180(1)(e); In re Welfare of A.B., 168 Wn.2d 908, 921, 232 P.3d 1104 (2010).

"To meet its burden to prove current unfitness in a termination proceeding, [the Department] is required to prove that the parent's parenting deficiencies prevent the parent from providing the child with 'basic nurture, health, or safety' by clear, cogent, and convincing evidence." In re Welfare of A.B., 181 Wn. App. 45, 61, 323 P.3d 1062 (2014).

Alexis's identified parental deficiencies included substance abuse, domestic

---

[3] Notwithstanding Alexis's contention concerning application of the additional factors in RCW 13.34.180(1)(f), Alexis assigns error to the trial court's finding as to the first part of the statute, which states "[t]hat continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home." He also assigns error to the trial court's finding that termination of the parent-child relationship is in the best interests of the children. But Alexis fails to support these claims of error with argument in his brief. The assignments of error are therefore waived. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Nevertheless, a review of the record establishes that the challenged findings are supported by the record.

violence issues, anger issues, and lack of parenting skills. In the order of dependency, the trial court ordered Alexis to participate in a substance abuse evaluation and follow any recommendations; complete random urinalysis testing; complete a domestic violence batterer's assessment and follow any recommendations; complete a psychological evaluation and follow any recommendations; and participate in a parenting program.

Dr. Jason Prinster conducted a psychological and parental competency evaluation of Alexis in October 2012. He found that Alexis presented many risk factors affecting his ability to parent. These included psychiatric diagnoses, emotional difficulties, history of substance abuse, and relationship, occupational, and housing instability. At the time of the 2012 evaluation, Dr. Prinster recommended that Alexis participate in a medication evaluation and mental health counseling to address his symptoms associated with his psychiatric and emotional difficulties, as well as an anger management program. Dr. Prinster also recommended a parent-focused intervention to help Alexis improve his parenting skills. Dr. Prinster concluded that if Alexis did not participate in the recommended services and ameliorate the risk factors identified in October 2012, these significant risk factors would still be present in April 2014.

By the time of the termination hearing, Alexis failed to complete substance abuse treatment, missed a significant number of random urinalysis testing, failed to complete parenting education, and did not complete any service recommendations made by Dr. Prinster. The trial court correctly found that despite the offering of these services, Alexis failed to improve his parental functioning. His

failure to correct his deficiencies prevented him from being able to adequately parent his children. The trial court did not err in finding that Alexis was currently unfit to parent his children.

The trial court also properly found that there was little likelihood that conditions would be remedied in the near future. The focus of RCW 13.34.180(1)(e) is whether the identified deficiencies have been corrected. In re Welfare of M.R.H., 145 Wn. App. 10, 27, 188 P.3d 510 (2008). "Even where there is evidence that the parent may eventually be capable of correcting parental deficiencies, termination is still appropriate where deficiencies will not be corrected within the foreseeable future." In re Welfare of A.G., 155 Wn. App. 578, 590, 229 P.3d 935 (2010). Although the law provides no numerical standard to measure the foreseeable future, this determination is a factual inquiry evaluated from "the child's point of view," which varies with the child's age. In re Dependency of A.C., 123 Wn. App. 244, 249, 98 P.3d 89 (2004) (citing In re Welfare of Hall, 99 Wn.2d 842, 851, 664 P.2d 1245 (1983)); see, e.g., In re Dependency of T.R., 108 Wn. App. 149, 165-66, 29 P.3d 1275 (one year is not foreseeable or near future for six-year-old child); Hall, 99 Wn.2d at 850-51 (eight months is not within the foreseeable future of four-year-old child); In re Dependency of A.W., 53 Wn. App. 22, 32, 765 P.2d 307 (1988) (one year is not in the near future of three-year-old child); P.D., 58 Wn. App. at 27 (six months is not in the near future of 15-month-old child).

The Department social worker involved in the case testified that he believed that Alexis would not be able to correct his parental deficiencies in the near future. He also concluded it would be detrimental to the children to give Alexis more time

to correct his parental deficiencies. The guardian ad litem confirmed this belief and testified that Alexis's failure to complete necessary services impacted his ability to safely parent his children. Substantial evidence supported the trial court's findings that there was little likelihood that Alexis would correct his parental deficiencies in the near future.

Affirmed.

Trickey, J

WE CONCUR:

Becker, J.