

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Dependency of<br>J.A.P. (D.O.B. 3/31/07),<br>T.L.P. (D.O.B. 2/26/08),<br>M.B.P. (D.O.B. 05/28/10), | )<br>)<br>)<br>)<br>) | No. 73042-8-I<br>(consolidated with<br>No. 73043-6-I and<br>No. 73044-4-I) |
| STATE OF WASHINGTON,<br>DEPARTMENT OF SOCIAL AND<br>HEALTH SERVICES, | )<br>)<br>) | DIVISION ONE<br><br>UNPUBLISHED OPINION |
| Respondent, | )<br>)<br>) | |
| v. | )<br>) | |
| DAVID LEE PERRY, JR., | )<br>)<br>) | |
| Appellant. | ) | FILED: November 23, 2015 |

APPELWICK, J. — After a four year dependency and a five day fact-finding hearing, the trial court terminated Perry's parental rights to his three sons. Perry appeals, arguing that the Department failed to prove several statutory factors by clear, cogent, and convincing evidence. Substantial evidence supports the trial court's findings that the Department offered or provided all necessary services capable of correcting Perry's parental deficiencies; there was little likelihood that Perry's parental deficiencies would be remedied in the near future; and

termination of parental rights was in the children's best interests. We affirm the termination orders.

## FACTS

David Perry is the father of three boys: J.P. (born March 31, 2007), T.P. (born February 26, 2008), and M.P. (born May, 28, 2010). The children's mother relinquished her parental rights and is not a party to this proceeding.

In November 2010, when the children were aged three years, two years, and five months, the Department of Social and Health Services (Department) removed them from the custody of their parents based on concerns about inadequate supervision and escalating incidents of domestic violence. Perry conceded that the children were initially removed because he and the mother were not "watching them closely, [or] protecting them from each other." Perry admitted that he screamed at his three sons "pretty much every day," spanked them "really hard," and hit them "upside the head." The court entered agreed orders finding the children dependent as to Perry on December 28, 2010.

The Department returned all three children to their parents' care in 2012. In July 2012, Perry assaulted the mother and assaulted J.P. by holding a power drill against his head, while it was turned on, and causing an abrasion. Perry pleaded guilty to assault charges and served a jail sentence. Perry was terminated from a domestic violence treatment program as a result of the incident. Perry characterized the assault against J.P. as a "bad joke."

Thereafter, the court entered an order excluding Perry from the family home. Beginning in October 2012, after his release from jail, the court allowed Perry to have supervised visitation with the children.

In January 2013, the Department placed the children in licensed care again after the mother was convicted of a crime and sentenced to six months in jail. The children briefly returned to live with the mother after her release from jail, but, in August 2013, the Department again placed the children in licensed care when one of the children sustained an injury while in the mother's care.

During Perry's visitation with all three children together, the children's behavior was "violent" and "volatile," and he was unable to control or redirect them. Eventually, the Department arranged for Perry to visit with two boys together and one separately. The professional supervisor who supervised Perry's visits with J.P. and M.P. requested the presence of a second supervisor. The supervisor reported that Perry would "become very, very angry at the children and they would react and become out of control" and she feared she would be unable to keep the children safe on her own. The supervisor reported that Perry was unable to intervene effectively when the children's behavior became violent, and at times, he was unable or unwilling to protect the children from hurting each other. Eventually, in 2014, due to concerns reported by the supervisors, the Department referred Perry to a counselor to provide therapeutic visitation with the two boys with a parent coaching component.

All three children have significant behavioral, medical, and educational needs. Both older boys have been diagnosed with attention deficit hyperactivity disorder, health conditions, and cognitive delays and have frequently exhibited aggressive and violent behavior. The older children suffered trauma on account of witnessing domestic violence in the home. The social worker described the youngest child as hyperactive, having "the most problematic behaviors in terms of aggression," and having "fits of anger and rage." At the time of trial, he was seeing both a therapist and a psychiatrist and required "line of sight supervision" at all times. The children had numerous placements during the dependency due in part, to their high needs and challenging behavioral issues.[1]

Perry has a history of domestic violence and has been convicted of assault, violation of no-contact orders, and interference with domestic violence reporting. He has been incarcerated five or six times since 2005. Perry testified about relationships with four women, and each of those relationships has involved domestic violence. The children's mother obtained protection orders four or five times and Perry admitted that in the past, he choked her and threatened to punch her. In addition to the July 2012 assault, in 2013 Perry was involved in a second domestic violence incident during the dependency when he assaulted his new girlfriend.

---

[1] According to the report of the Volunteer Guardian Ad Litem (VGAL), T.P. had 12 placements and M.P. had 9 placements during the dependency.

Perry engaged in multiple domestic violence treatment programs during the dependency. Perry finally completed domestic violence treatment shortly before trial. However, the treatment provider revoked Perry's certificate of completion when she learned about a permanent protection order the mother obtained in July 2014 after Perry sent her threatening and harassing messages.

The Department filed petitions to terminate Perry's parental rights on January 31, 2014. At the time of the fact-finding hearing in October 2014, the children were ages 7, 6, and 4.

At the fact-finding hearing on the Department's petition, the court considered the testimony of numerous witnesses, including Perry, social workers, the Volunteer Guardian Ad Litem (VGAL), therapists, counselors, and visitation supervisors. Psychologist Dr. Robert Deutsch, who performed a psychological evaluation of Perry, testified that he diagnosed Perry with depression and maladaptive personality features. He believed that Perry's difficulty controlling his anger stemmed from frustration, poor problem solving and coping skills, and that depression, confusion, and below average intelligence contributed to this problem. He testified that Perry showed "poor insight" into problems. Dr. Deutsch also reported that Perry could not describe his children beyond basic details and did not appear to understand their specific needs and challenges. Testing revealed that Perry had a "very poor grasp" of issues related to children's growth and development and "very, very poor empathetic awareness" to meet the children's developmental needs. Dr. Deutsch concluded that Perry would not be able to effectively parent his children due to his cognitive and psychological

5

challenges and that his "significant deficits on several levels" would "limit his ability to change."

Two social workers testified that Perry's parental deficiencies included his inability to provide adequate care and supervision of his children, particularly in light of their high needs. The current social worker also identified Perry's anger issues and propensity toward domestic violence as a parental deficiency and believed that placing the children in his care would put them at high risk for being in an abusive home environment.

The VGAL also recommended terminating Perry's parental rights. In her final report to the court, she stated:

> Mr. Perry has not made progress in correcting his parental deficiencies that brought his children into care. His parenting ability, even in a controlled setting with the direct input of a therapist during visits with [M.P.] and [J.P.] is tenuous at best. These boys require extraordinary parenting and Mr. Perry is incapable of addressing their needs despite numerous services. Since coming in to [sic] care, these boys have spent more time in care than in the care of their parents.

The VGAL also opined that the length of the dependency had adversely affected the children.

The court found that Perry had significant deficits, was unfit to parent, and had not benefited from services provided by the Department. The court also found there was little likelihood that Perry's parental deficiencies could be remedied so that the children could be reunited with him in the near future, which the court defined as within six months. The court entered orders on January 6, 2015, terminating Perry's rights as to all three children. Perry appeals.

## DISCUSSION

Parents have a fundamental liberty interest in the care and welfare of their children. In re Dependency of Schermer, 161 Wn.2d 927, 941, 169 P.3d 452 (2007). To terminate parental rights, the Department must satisfy a two-pronged test. In re Dependency of K.N.J., 171 Wn.2d 568, 576, 257 P.3d 522 (2011). The Department must first prove the statutory elements set forth in RCW 13.34.180(1)(a) through (f)[2] by clear, cogent, and convincing evidence. Id.

---

[2] RCW 13.34.180(1) states, in pertinent part:

A petition seeking termination of a parent and child relationship may be filed in juvenile court by any party, including the supervising agency, to the dependency proceedings concerning that child. Such petition shall conform to the requirements of RCW 13.34.040, shall be served upon the parties as provided in RCW 13.34 .070(8), and shall allege all of the following unless subsection (3) or (4) of this section applies:

(a) That the child has been found to be a dependent child;

(b) That the court has entered a dispositional order pursuant to RCW 13.34.130;

(c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;

(d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. . . ;

. . . ; and

(f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home. If the parent is incarcerated, the court shall consider whether a parent maintains a meaningful role in his or her child's life based on factors identified in RCW

7

Clear, cogent, and convincing evidence exists when the evidence shows the ultimate fact at issue to be highly probable. In re Dependency of K.R., 128 Wn.2d 129, 141, 904 P.2d 1132 (1995); In re Welfare of Sego, 82 Wn.2d 736, 739, 513 P.2d 831 (1973).

We review an order terminating parental rights de novo. K.N.J., 171 Wn.2d at 574. "The court's factual findings must be upheld if supported by substantial evidence from which a rational trier of fact could find the necessary facts by clear, cogent, and convincing evidence." In re Dependency of K.S.C., 137 Wn.2d 918, 925, 976 P.2d 113 (1999). Evidence is "substantial" if it is sufficient to persuade a fair-minded person of the truth of the fact at issue. In re Welfare of S.J., 162 Wn. App. 873, 881, 256 P.3d 470 (2011). "The trial judge has the advantage of having the witnesses before him or her, and deference to the findings is of particular importance in deprivation proceedings." K.S.C., 137 Wn.2d at 925.

Perry argues that the Department (1) failed to offer all reasonably available and necessary services including: appropriate domestic violence treatment, interactive parenting classes, individual counselling, and therapeutic visitation with all three children and (2) failed to present substantial evidence that his parental deficiencies could not be remedied in the very near future. Perry

---

13.34.145(5)(b); whether the department or supervising agency made reasonable efforts as defined in this chapter; and whether particular barriers existed as described in RCW 13.34.145(5)(b) including, but not limited to, delays or barriers experienced in keeping the agency apprised of his or her location and in accessing visitation or other meaningful contact with the child.

also contends that the court's finding that termination was in the best interests of the children was both premature and unsupported by the evidence.

I. Necessary and Reasonable Services

Perry argues that the Department failed to provide appropriate domestic violence treatment because, at some point, he was "prematurely" moved from groups that met weekly to groups that met monthly. He also claims that the Department should have offered interactive parenting classes instead of classroom-based instruction. Finally, he contends the Department failed to offer him the following necessary services: individual counseling, therapeutic visitation with all three children together, and a comprehensive psychological evaluation.

In order to terminate parental rights, the Department must prove that it offered or provided all necessary services, reasonably available, capable of correcting the specific parental deficiencies within the foreseeable future. RCW 13.34.180(1)(d). The Department must offer services that are tailored to each parent's individual needs. In re Dependency of D.A., 124 Wn. App. 644, 651, 102 P.3d 847 (2004).

The record indicates that the Department offered domestic violence treatment to Perry multiple times during the dependency with different entities. Perry participated in treatment with mental health counselor Sandra Poirer from 2012 to 2013 and again from 2013 to 2014. Poirer testified that her program is state certified, which requires a minimum of six months of weekly sessions, followed by six months of monthly sessions.

There is nothing in the record to indicate that, in any program he attended, Perry was moved to monthly sessions before completing the required amount of weekly sessions. While explaining why he believed individual weekly counselling would be helpful to Perry, Dr. Deutsch testified only that Perry "felt" he should have remained longer in weekly sessions. The record does not support Perry's claim that the Department failed to provide adequate domestic violence treatment.

On the other hand, the evidence supports the court's finding that the Department offered individual counselling to Perry. Perry suggests that the Department did not reasonably offer the service because no counsellor accepted the Department's referral. But, Perry ignores the social worker's testimony that she identified a provider who accepted the referral and Perry refused to engage in counselling with any counselor referred by the Department.

Perry next contends that the Department failed to offer sufficiently tailored services. Specifically, based on Dr. Deutsch's testimony that he is a "concrete thinker," Perry claims that interactive parenting classes would have been more effective than classroom-based instruction. He maintains that the Department failed to offer this service. However, the Department offered and he participated in parent-child interactive therapy, a "hands-on" program designed to improve parenting skills.

Along the same lines, Perry contends that the Department was required and failed to provide therapeutic visitation with all three of his children. As explained, the Department referred Perry for therapeutic visitation with a parent coaching component for his visits with J.P. and T.P. in the spring of 2014. At some later point, Perry asked the Department to consolidate the visits with all three children. At the time of trial, the Department was still investigating the feasibility of his request. But, as the court properly found, while undoubtedly crucial for reunification, visitation does not, on its own, correct parental deficiencies and is not a "service" that must be provided under RCW 13.34.180(1)(d). See In re Dependency of T.H., 139 Wn. App. 784, 791-92, 162 P.3d 1141 (2007) (differentiating between "services" and "visitation").

Finally, Perry argues that the Department failed to offer a comprehensive psychological assessment with a parenting component because it did not arrange for the necessary transportation to allow Dr. Deutsch to observe him with his children. But, in fact, Dr. Deutsch could not remember the specific reason why the parenting observation did not occur. And, Perry fails to acknowledge that the Department provided a separate parenting assessment, as required by the dispositional order.

Substantial evidence supports the court's finding that the Department provided all necessary and reasonably available services to Perry.

II. <u>Likelihood Conditions Would be Remedied</u>

Perry challenges the evidence supporting the court's finding that there was little likelihood that the conditions of his parental deficiency could be

remedied so that his children could be returned to his care in the near future. He claims that his parental weaknesses "were not so significant" and that the evidence showed that he could be ready to parent his children in the "very near future."

Before a court may terminate a parent's rights, the Department must prove "[t]hat there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future." RCW 13.34.180(1)(e). "If the State offers or provides all necessary services reasonably capable of correcting parental deficiencies within the foreseeable future and the parent does not substantially improve within a year of the dependency order, a presumption arises that the State has established RCW 13.34.180(1)(e)." In re Welfare of T.B., 150 Wn. App. 599, 608, 209 P.3d 497 (2009). "A determination of what constitutes the near future depends on the age of the child and the circumstances of the placement." In re Dependency of T.L.G., 126 Wn. App. 181, 204, 108 P.3d 156 (2005). "A matter of months for young children is not within the foreseeable future to determine if there is sufficient time for a parent to remedy his or her parental deficiency." In re Welfare of M.R.H., 145 Wn. App. 10, 28, 188 P.3d 510 (2008).

Perry's identified parental deficiencies included an inability to control his anger and refrain from violence. The record supports the court's determination that despite his participation in services to address these issues, he failed to substantially benefit or make progress. Perry had nearly completed a year long domestic violence treatment program when he assaulted the mother and J.P. in

2012. Again, in 2013, while participating in a domestic violence treatment program, he assaulted a new girlfriend. Poirier rescinded his certificate of completion of a program in 2014 based on a third incident that resulted in a new protection order. Perry admitted to sending the mother messages about a knife that formed the basis for the order. Poirier decided that Perry would be required to return to the initial phase of the program. She did not provide a timeframe for Perry to address this deficiency. But, the implication of Poirier's testimony is that Perry would not be able to successfully complete domestic violence treatment for at least six months, if not a full year. Poirier expressed concern about whether Perry would ever be able to adjust his violent behavior and said he ultimately might "not be amenable to treatment."

And, despite Perry's participation in both domestic violence and anger management treatment during the course of the dependency, he continued to display an inability to control his anger when interacting with his children. Perry was engaged in domestic violence treatment in 2014 when the professional supervisor requested the presence of a second supervisor during visitation due to Perry's intimidating and angry behavior. Also, despite Perry's participation in parenting classes during the dependency, he was still largely unable to deescalate the children's aggression, appropriately discipline them, and often gave up on controlling their behaviors. Despite his claims to the contrary, the evidence did not show that Perry had made substantial improvements nor indicate that conditions would be remedied in the near future. And, as of the time of the hearing, the therapeutic visitation provider did not believe that Perry had

yet reached the point where visits could take place in a community setting, nor did she recommend visitation with all three children at once.

At the time of the fact-finding hearing, the children had had only supervised contact with Perry for two years. No witness recommended reunification with Perry. Although Dr. Deutsch said he believed that Perry would most likely express his anger toward romantic partners, he did not say that Perry's anger and violence issues did not pose a threat to his children. Dr. Deutsch expressed the opinion that Perry was not currently fit to parent his children and stated that his prognosis for change was "guarded." When asked specifically about a timeframe for Perry's progress toward correcting his deficiencies, Dr. Deutsch said that only a modest amount of change could be realistically expected, "and it would not happen quickly." Likewise, according to the VGAL, although Perry clearly loved his children, there was nothing to indicate that he had made any progress toward correcting his deficiencies or that he would be a fit parent in the foreseeable future. Substantial evidence in the record supports the trial court's findings that there was little likelihood that Perry would correct his parental deficiencies in the near future.

III. Best interests of the Children

Finally, once the trial court concludes that the State has established the factors of RCW 13.34.180(1) by clear, cogent, and convincing evidence, it must then consider whether terminating parental rights is in the best interest of a child. The Department must establish by a preponderance of the evidence that termination is in the best interest of the child. RCW 13.34.190(1)(b). This is a

14

fact specific inquiry. In re Welfare of Aschauer, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980). "Where a parent has been unable to rehabilitate over a lengthy dependency period, a court is 'fully justified' in finding termination in the child's best interests rather than 'leaving [the child] in the limbo of foster care for an indefinite period while [the parent] sought to rehabilitate himself.'" In re Dependency of T.R., 108 Wn. App. 149,167, 29 P.3d 1275 (2001) (alterations in original) (quoting In re Dependency of A.W., 53 Wn. App. 22, 33, 765 P.2d 307 (1988)).

Perry claims that there is evidence in the record to reflect that he has a positive relationship with his children. Therefore, he contends that insufficient evidence supports the trial court's finding that terminating his parental rights was in the children's best interest.

There is evidence in the record to support the court's findings that Perry loves his children and made efforts during the dependency toward improving his parental deficiencies. But, the weight of the evidence also supports the court's finding that termination of the relationship was in the children's best interests. There was evidence that Perry lacked a significant bond with M.P., that the children's behaviors surrounding the visitation had deteriorated, and that they appeared to be traumatized by the visits. There was also evidence that the children had been negatively affected by the prolonged dependency, they have prospects for permanence in their current placements, and have a substantial

need for stability and permanence. Both the VGAL and the current social worker testified that termination was in the children's best interests. The social worker further testified that she believed that placement with Perry would be, not merely detrimental, but potentially "life threatening." The evidence established that Perry had been unable to rehabilitate during the prolonged period of dependency and that his deficiencies could not be remedied in the near future. The trial court did not err in finding that the State proved by a preponderance of the evidence that termination of Perry's parental rights was in the children's best interest.

We affirm the court's orders of termination.

WE CONCUR: