# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Dependency of

B.M.C.,
D.O.B.: 02/13/12,

Minor Child.

No. 74950-1-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: January 23, 2017

TRICKEY, A.C.J. — William Chambers appeals the order terminating his parental rights to his 4-year-old son, B.M.C. Chambers challenges the sufficiency of the evidence supporting the trial court's decision. Because Chambers has been incarcerated throughout B.M.C.'s entire life, will remain so for at least 18 months and possibly much longer, and given the absence of any consistent contact between Chambers and B.M.C., substantial evidence supports the trial court's findings, which in turn, support the order of termination. We affirm.

## FACTS

B.M.C. was born February 13, 2012. At that time, Chambers was incarcerated. B.M.C. lived with his mother for about a week when she brought him to Elizabeth Adams. Adams had been a foster grandmother to B.M.C.'s mother during her own dependency.

Chambers has spent essentially his entire adult life in jail or prison.[1] In 2009, at age 16, Chambers pleaded guilty to manslaughter, second degree robbery, and possession of stolen property. In 2011, he was sentenced to 8

---

[1] Any factual findings referenced in the facts section of this opinion refer to unchallenged findings, which are verities on appeal. In re Interest of J.F., 109 Wn. App. 718, 722, 37 P.3d 1227 (2001).

months in jail for first degree theft and sentenced to 21 months in prison for second degree attempted assault. He was also convicted of hit and run-attended vehicle and third degree theft. In 2013, Chambers pleaded guilty to being a felon in possession of a firearm after he was found with a stolen assault rifle and 30 rounds of ammunition. He was sentenced to 72 months in a federal prison.

Chambers has been out of custody only two weeks during B.M.C.'s life. During that two week period, when B.M.C. was about 7 months old, Chambers saw him for the first time and spent some time with him.

In August 2013 B.M.C. was formally placed with Adams by court order. At that time, Chambers was incarcerated in federal prison in California.

On April 23, 2014, Chambers agreed to a dependency and dispositional order for B.M.C. The dependency order indicates that Chambers had two parental deficiencies: uncertainty regarding B.M.C.'s paternity and a criminal history which rendered him unavailable to perform parental obligations. The dispositional order required Chambers to establish paternity, but nothing else. Paternity testing established Chambers as B.M.C.'s biological father.

Chambers was incarcerated in federal prison throughout B.M.C.'s dependency. While incarcerated, Chambers received multiple disciplinary infractions. He was transferred from a medium security prison to a maximum security prison due to fighting. He continued to be involved in fights and was placed in a secured housing unit with 23 hours of daily lockdown. Due to misconduct, Chambers lost phone and visitation privileges for significant periods of time.

2

The Department of Social and Health Services (Department) filed a petition to terminate Chambers' parental rights, and a hearing was held on the petition on February 1 and 2, 2016.[2] The trial court heard testimony from five witnesses and admitted 35 exhibits. B.M.C. was almost 4 years old at the time of trial.

Chambers is not expected to be released until April 2018, and if he fails to accumulate good time credits, his release date could be as late as October 2018. Chambers testified that, although he could be released to a halfway house before his scheduled release date, this would not allow him to provide parental care to B.M.C. He testified that he would be unable to care for B.M.C. on a full time basis until a year or two after his release from prison.

Chambers acknowledged that he had seen B.M.C. only once in California when Adams brought him there. He also testified that B.M.C. had frequent contact with Chambers' grandmother, Margaret Harris, and other members of Chambers' family.

Adams testified that B.M.C. had lived with her during almost all of his life. She testified that B.M.C. is doing well, has no special problems or needs, and is bonded with her. She would like to adopt B.M.C.

The trial court found that, Chambers had not established a meaningful relationship with B.M.C., was not currently capable of parenting B.M.C. and would not be capable in the near future, and there were no services the Department could have offered that would make Chambers available in B.M.C.'s

---

[2] The parental rights of B.M.C.'s mother were terminated earlier by default.

foreseeable future. It found that the Department had proved termination was in B.M.C.'s best interest, and entered an order terminating Chambers' parental rights.

Chambers appeals.

## ANALYSIS

Washington courts use a two-step process when deciding whether to terminate parental rights. In re Welfare of A.B., 168 Wn.2d 908, 911, 232 P.3d 1104 (2010); RCW 13.34.190(1). The State must prove the requirements set forth in RCW 13.34.180(1) by clear, cogent, and convincing evidence:

(a) That the child has been found to be a dependent child;
(b) That the court has entered a dispositional order pursuant to RCW 13.34.130;
(c) That the child has been removed . . . from the custody of the parent for a period of at least six months pursuant to a finding of dependency;
(d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;
(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. . . .
. . .; and
(f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.

If a parent is incarcerated, the court must also

consider whether a parent maintains a meaningful role in his or her child's life based on factors identified in RCW 13.34.145(5)(b); whether the department or supervising agency made reasonable efforts as defined in this chapter; and whether particular barriers existed as described in RCW 13.34.145(5)(b) including, but not limited to, delays or barriers experienced in keeping the agency

apprised of his or her location and in accessing visitation or other meaningful contact with the child.

RCW 13.34.180(1)(f). The trial court may consider the six factors identified in RCW 13.34.145(5)(b) in assessing whether the incarcerated parent "maintains a meaningful role in the child's life":

> (i) The parent's expressions or acts of manifesting concern for the child, such as letters, telephone calls, visits, and other forms of communication with the child;
> (ii) The parent's efforts to communicate and work with the department or supervising agency or other individuals for the purpose of complying with the service plan and repairing, maintaining, or building the parent-child relationship;
> (iii) A positive response by the parent to the reasonable efforts of the department or the supervising agency;
> (iv) Information provided by individuals or agencies in a reasonable position to assist the court in making this assessment, including but not limited to the parent's attorney, correctional and mental health personnel, or other individuals providing services to the parent;
> (v) Limitations in the parent's access to family support programs, therapeutic services, and visiting opportunities, restrictions to telephone and mail services, inability to participate in foster care planning meetings, and difficulty accessing lawyers and participating meaningfully in court proceedings; and
> (vi) Whether the continued involvement of the parent in the child's life is in the child's best interest.

If the State meets its burden under RCW 13.34.180(1), it must then prove by a preponderance of the evidence that termination is in the "best interests of the child." RCW 13.34.190(1)(b).

Once the trial court weighs the evidence and enters findings of fact and conclusions of law, this court's review is limited to whether those findings of fact are supported by substantial evidence and whether they support the trial court's conclusions of law. In re Dependency of K.S.C., 137 Wn.2d 918, 925, 976 P.2d

5

113 (1999). In determining whether substantial evidence supports the trial court's findings, this court will not weigh the evidence or make credibility determinations. In re Welfare of C.B., 134 Wn. App. 942, 953, 143 P.3d 846 (2006). Unchallenged findings of fact are verities on appeal. In re Interest of J.F., 109 Wn. App. 718, 722, 37 P.3d 1227 (2001).

Chambers concedes that the first three statutory elements required for termination were established at trial. RCW 13.34.180(1)(a)-(c). However, he challenges the trial court's findings that the State met its burden under RCW 13.34.180(1)(d)-(f) in light of the additional factors relevant to incarcerated parents. We disagree.

### Necessary and Reasonably Available Services

Chambers challenges the sufficiency of the evidence supporting the trial court's finding that the Department offered or provided all necessary services capable of correcting his parental deficiencies within the foreseeable future as required by RCW 13.34.180(1)(d). "A service is necessary within the meaning of the statute if it is needed to address a condition that precludes reunification of the parent and child." In re Dependency of D.L.B., 188 Wn. App. 905, 920, 355 P.3d 345 (2015), aff'd, 186 Wn.2d 103, 376 P.3d 1099 (2016); see RCW 13.34.136(1)(b)(i) ("services" are offered to parents "to enable them to resume custody"). Although Chambers claims parenting and anger management classes

were necessary because these services could have "facilitated the legislative goal of family reunification," we disagree.[3]

Chambers' identified deficiency was his history of committing criminal acts which rendered him unable to perform his parental obligations. Neither anger management nor parenting classes were ordered because neither would have addressed Chambers' deficiency.

Chambers has failed to identify any services that were capable of correcting his parental deficiencies in the foreseeable future. Accordingly, sufficient evidence supports the trial court's finding that the Department offered or provided all necessary services as required by RCW 13.34.180(1)(d) because any additional services would have been futile. D.L.B., 188 Wn. App. at 920 ("The Department is not required to offer or provide services that would be futile."); In re Welfare of M.R.H., 145 Wn. App. 10, 25, 188 P.3d 510 (2008) ("Where the record establishes that the offer of services would be futile, the trial court can make a finding that the Department has offered all reasonable services.").

### Current Unfitness to Parent B.M.C.

To warrant termination of parental rights, "[t]he Department must prove that the parent is currently unfit." D.L.B., 188 Wn. App. at 921. Chambers challenges the trial court's finding that he is currently unfit to parent B.M.C. To meet its burden to prove current unfitness, the State must prove that the parent's "deficiencies prevent the parent from providing the child with 'basic nurture,

---

[3] Mot. for Accelerated Review and Appellant's Br. at 15.

health, or safety.'" In re Welfare of A.B., 181 Wn. App. 45, 61, 323 P.3d 1062 (2014) (quoting RCW 13.34.020). At 4 years old, B.M.C. needs a caregiver to provide all of his basic needs, including food, shelter, clothing, medical care, and education. Chambers cannot provide for any of these needs while incarcerated. Thus, he is currently unfit to parent B.M.C. D.L.B., 188 Wn. App. at 921.

Chambers claims that imprisonment alone is insufficient to show current parental unfitness, but his citation to In re Sego, 82 Wn.2d 736, 513 P.2d 831 (1973), in support of that contention is unavailing. In Sego, the court made no ruling as to whether incarceration renders a parent currently unfit. 82 Wn.2d at 740 (incarceration alone "does not necessarily justify an order of *permanent deprivation*" (emphasis added)); cf. In re Dependency of T.L.G., 126 Wn. App. 181, 203-04, 108 P.3d 156 (2005) (the court first considers whether a parent is currently unfit and then asks whether the evidence supports a "finding under RCW 13.34.180(1)(e) that 'there is little likelihood conditions will be remedied so that the child[] can be returned to the parent[] within the near future'" (footnote omitted) (quoting RCW 13.34.180(1)(e))). Because Chambers is unavailable to provide for any of B.M.C.'s basic needs while he is incarcerated, he is currently unfit.

## Little Likelihood of Reunification

Chambers challenges the trial court's finding under RCW 13.34.180(1)(e) that "there is little likelihood that conditions will be remedied so that the child can

be returned to the parent in the near future."[4] He claims he will be able to care for B.M.C. when he is released from prison in late 2017 or 2018 because he and B.M.C. can live with Harris. We disagree.

Chambers will not be released from prison until April 2018 and possibly much later. In addition, he acknowledges that he will not be capable of caring for B.M.C. until a year or more after he has been released from prison. Thus, Chambers' own testimony supports the trial court's finding that B.M.C. will not have a parent available to meet his daily needs until he is 6 or 7 years old, at which point he will have never lived with his father.

What constitutes "near future" depends on the age of the child. T.L.G., 126 Wn. App. at 204. B.M.C. was almost 4 years old at the time of the termination hearing, and taken from his point of view, the near future is significantly less than the two years Chambers had remaining on his prison term. See, e.g., In re Dependency of T.R., 108 Wn. App. 149, 165-66, 29 P.3d 1275 (2001) (one year is not foreseeable or near future for a 6-year-old child); In re Dependency of A.W., 53 Wn. App. 22, 32, 765 P.2d 307 (1988) (one year not in the near future of 3-year-old child). To the contrary, as noted by the Court Appointed Special Advocate, Cassie Short, from B.M.C.'s perspective, waiting another two years until Chambers was released would be like waiting "a lifetime."[5]

---

[4] Mot. for Accelerated Review and Appellant's Br. at 16.
[5] Report of Proceedings (RP) at 162.

## No Meaningful Relationship Existed Between B.M.C. and Chambers

Because Chambers was incarcerated at the time of trial, the trial court had to consider whether Chambers could maintain a meaningful role in B.M.C.'s life and whether the Department made reasonable efforts to help him remedy his deficiencies.[6] See In re Parental Rights to M.J., 187 Wn. App. 399, 408, 348 P.3d 1265 (2015). In deciding whether Chambers maintained a meaningful role in B.M.C.'s life, the trial court had to consider the factors identified in RCW 13.34.145(5)(b). See In re Dependency of A.M.M., 182 Wn. App. 776, 787, 332 P.3d 500 (2014) (trial court's assessment of RCW 13.34.180(1)(f) in cases involving incarcerated parent must be "informed by evidence presented and conclusions reached regarding the six factors contained in RCW 13.34.145(5)(b)"). Even though the trial court is statutorily mandated to consider the factors set forth in RCW 13.34.145(5)(b), these factors do not compel any conclusion regarding termination of parental rights. In re Welfare of E.D., 195 Wn. App. 673, 381 P.3d 1230 (2016).

After reviewing the factors contained in RCW 13.34.145(5)(b), the trial court concluded that Chambers "ha[d] not had a meaningful role in [B.M.C.]'s life."[7] Chambers challenges this finding, claiming that he has built a relationship with B.M.C. He notes that he has had several in-person visits with B.M.C., talked

---

[6] In Sego, the court identified certain factors to be taken into account when determining an incarcerated parent's fitness, including the nature of the crime, the victim, and the parent's conduct before and during incarceration. 82 Wn.2d at 740. Unchallenged findings establish that the trial court considered all of the factors set forth in Sego. Chambers does not challenge these findings on appeal.

[7] Clerk's Papers (CP) at 160 (Finding of Fact (FF) 2.29).

to B.M.C. on the phone, and has sent cards, letters, and pictures. He claims that through these efforts, he maintained a bond with B.M.C.

The trial court reviewed Chambers efforts, but concluded that they did not show that Chambers had a meaningful role in B.M.C.'s life. Substantial evidence supports the trial court's conclusion.

Unchallenged finding of fact 2.21 establishes that Chambers has had one face-to-face visit with B.M.C. in the past three years and that was two years ago; and that in the past six months, Chambers was only able to call B.M.C. once. In addition, Adams testified that Chambers' phone calls were inconsistent, and he went eight or nine months without any calls to B.M.C. She also testified that B.M.C. never asked to speak with Chambers, and it was unclear whether B.M.C. could even "put the voice with a face in his mind."[8] Short testified that she did not believe B.M.C. knew who his father is, the phone calls were not meaningful to him, and there was no bond on the part of B.M.C. with his father.

Unchallenged finding of fact 2.17 acknowledges that Chambers' minimal, intermittent contact with B.M.C. made it difficult for Chambers "to have a meaningful relationship" with B.M.C.[9] It also establishes that Chambers' lack of contact with B.M.C. resulted from his own conduct—misbehavior in prison—not from any action or inaction on the part of the Department.

Accordingly, substantial evidence supports the trial court's finding that Chambers "ha[d] not had a meaningful role in [B.M.C.]'s life" and there are "no

---

[8] RP at 60-61.
[9] CP at 158.

11

efforts the Department can make that would provide services to [Chambers] that can correct his deficiency of being unable to provide parenting responsibilities."[10]

### Continuation of the Parent/Child Relationship

Chambers challenges the trial court's finding that continuation of the parent-child relationship clearly diminished B.M.C.'s prospects for an early integration into a permanent and stable home because his relationship with B.M.C. was not endangering his placement. See RCW 13.34.180(1)(f). He contends that there is no indication Adams will cease caring for B.M.C. before Chambers is released.

The main focus of this factor is whether the parent-child relationship impedes the child's prospects for integration. K.S.C., 137 Wn.2d at 927. The Department can satisfy RCW 13.34.180(1)(f) by showing that "prospects for a permanent home exist but the parent-child relationship prevents the child from obtaining that placement." In re Welfare of R.H., 176 Wn. App. 419, 428, 309 P.3d 620 (2013).

It is undisputed that prospects for a permanent home exist because Adams desires to adopt B.M.C. Evidence that the parent-child relationship is preventing B.M.C. from a permanent placement includes Department Social Worker Diane Drobinski's testimony that B.M.C.'s relationship with Chambers created a barrier which prevented adoption from occurring, and Adams' testimony that she does not wish to enter into guardianship.

---

[10] CP at 160 (FF 2.29).

Chambers again argues that he has maintained a meaningful role in B.M.C.'s life despite incarceration, but as previously discussed, substantial evidence showed otherwise. Thus, substantial evidence supports the court's finding that continuation of the parent-child relationship impeded B.M.C.'s prospects for early integration into a stable and permanent home because it prevented Adams from adopting B.M.C.

<u>Termination was in B.M.C.'s Best Interest</u>

Chambers challenges the trial court's determination that termination is in B.M.C.'s best interest. We accord broad discretion to the trial court's best interest determination and its decision receives great deference on review. <u>In re Dependency of J.A.F.</u>, 168 Wn. App. 653, 670, 278 P.3d 673 (2012). Substantial evidence supporting the trial court's finding on this issue includes: (1) Adams' testimony that B.M.C. is doing well in her care and has no problems or special needs; (2) Drobinski's testimony that B.M.C. does not have a meaningful relationship with Chambers and it is in B.M.C.'s best interest to be adopted by Adams; and (3) Short's testimony that B.M.C. considers Adams to be his parent and that moving B.M.C. from his current placement would be a "huge disservice" and "very harmful" to him.[11]

Chambers contends that termination of his parental rights is not in B.M.C.'s best interest because it will sever B.M.C.'s relationship with Harris and other family members. However, testimony at trial indicates that Adams and Harris have an amicable relationship, and there is no reason to think Adams will

---

[11] RP at 160-63.

act in a way that is contrary to B.C's best interest by refusing to foster relationships that are beneficial to him.

Affirmed.

Trickey, ACJ

WE CONCUR:

Appelwick, J

Cox, J.