976 P.2d 113 (1999)
137 Wash.2d 918
In re DEPENDENCY OF K.S.C., B.D. 11/02/92, Minor Child.
Beverly Jean Burrell, Petitioner,
v.
State of Washington, Department of Social and Health Services, Respondent.
No. 66999-6.
Supreme Court of Washington, En Banc.
Argued February 24, 1999.
Decided May 13, 1999.
Reconsideration Denied July 2, 1999.
*114 Kimberly N. Gordon, Jason B. Saunders, Washington Appellate Project, Seattle, for Petitioner.
*115 Christine Gregoire, Atty. Gen., Bruce P. Clausen, Asst. Atty. Gen., Seattle, for Respondent.
MADSEN, J.
This case involves termination of a mother's parental rights in one of her children. The primary issue is whether the allegation in RCW 13.34.180(6) has been proven. That section requires the State to prove that continuation of the parent-child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home. Among other things, the mother claims that the child was in a guardianship prior to termination and that the State's plan is to continue the guardianship following termination. She argues RCW 13.34.180(6) cannot be satisfied in these circumstances. She argues that guardianship is not permanent and stable within the meaning of the statute. She additionally argues that the trial court erred in failing to order a dependency guardianship in lieu of termination. We affirm.

FACTS
K.S.C. was born in November 1992 to petitioner Beverly Burrell (the mother) and Billy Jo Cummings. Both parents have substance abuse problems and numerous criminal convictions. Soon after the birth, the mother was incarcerated and K.S.C. began living with Billy Jo's sister, Betty Jo Cummings. A dependency petition was filed in November of 1993, alleging that the child had lived 11 of the preceding 12 months with her paternal aunt, that both parents were addicted to drugs and alcohol, that both parents had extensive criminal involvement, and that the parents had older children who did not reside with the parents because the parents were unable or unwilling to establish and maintain a stable home free of drug and alcohol use. On January 21, 1994, the mother entered into an agreed dependency. The dispositional plan required the mother to participate in drug/alcohol assessment and treatment, to establish and maintain a safe and stable residence, and to complete a parenting class. The dependency was continued and the child was not returned to either parent.
In June 1996, the Department of Social and Health Services (DSHS) filed a petition to terminate parental rights. A hearing on the petition was held in December 1996, and on January 15, 1997, the trial court terminated the mother's parental rights. K.S.C.'s father's rights were later terminated, and he has not appealed.
The mother failed to appear for the first day of the termination trial, but attended the remainder.[1] She testified that from April 1993 until the time of the termination trial she was incarcerated a total of 22 months. In early 1996, she was arrested and convicted on two charges of prostitution. At the time of the trial she was on supervised probation. She denied that the 1996 convictions involved drug use.
The mother has a history of alcohol and drug, primarily cocaine, abuse, which began when she was a teenager. She acknowledged that she had been assessed to be in the late stages of drug and alcohol addiction. She completed a drug abuse program while in prison, and when released began treatment in a program of her choice; however, after three clean urinalysis tests she was discharged from the program because she failed to attend classes. She testified that her failure to complete the program was due to her work schedule. She testified that she worked at two jobs, but her testimony did not establish that her work schedule prevented her from attending drug treatment classes. The mother testified that she was in compliance with unsupervised probation, had stayed out of trouble, and associated with people from AA rather than prior acquaintances associated with drugs and prostitution. She testified she regularly attended AA, but had no sponsor. She completed a parenting class.
The mother testified that following her release early in 1996 from prison and prior to the hearing in December 1996 she had moved *116 three times and indicated she planned to move again. She testified that her income was a GAU grant based on ongoing mental health issues, and that she needed counseling because she had been abused as a child. She testified that Billy Jo (the father of K.S.C. and three of her four older children) had physically abused her in the past and that he had sexually molested one of her daughters. She also testified that if she could not have K.S.C. she wanted Billy Jo to have custody.[2]
Raymond Cummings, Billy Jo's brother, testified that he and his wife have the mother's and Billy Jo's three older children in their custody, and that the mother rarely has anything to do with the girls and sometimes promises visits which she does not make. The mother testified that she visits K.S.C. and her daughters in Raymond Cumming's care at least once a month, but that recent visits had been hampered by lack of finances because she lives in Tacoma while K.S.C. lives in Seattle. Betty Jo Cummings testified that in the past few months before the trial the mother visited K.S.C. only once, at a birthday party held for K.S.C. in November 1996. Betty Jo testified that the mother's behavior at the party was consistent with her behavior when she had been under the influence of drugs in the past.
Several caseworkers testified. The caseworkers generally described difficulty in keeping in contact with the mother because of her moves and failure to advise DSHS of her address and phone number. Testimony from caseworkers, the mother, and Betty Jo Cummings was consistent that K.S.C. is well cared for and happy with her aunt, and that visitation with the mother had gone well, though the mother had not visited as often as authorized.
Permanency plans for K.S.C., until the petition for termination was filed, indicated relative care, return to a parent, or guardianship as the permanent plan. A permanency planning findings and order filed September 16, 1996, identifies relative adoption as the permanent plan. A dependency review hearing order filed February 18, 1997, indicates adoption is the permanent plan. On direct examination, Betty Jo Cummings was asked if she understood that termination of parental rights would mean that she could pursue a guardianship or adoption. She responded, "Uh-huh, that's something to think about." Verbatim Report of Proceedings (RP) at 168 (Dec. 3, 1996). On cross-examination by the mother's counsel, she was asked: "Okay. Now, your first choice would be to do a guardianship; is that correct?" She said "Yes." RP at 173 (Dec. 3, 1996). Betty Jo also testified that she wants K.S.C. to know who her mother is and she wants visitations between the mother and K.S.C. to continue.
The trial court terminated the mother's parental rights. The court determined that the mother has a significant substance abuse problem which she has not overcome. The court said that her failure to appear on the first day of the trial "speaks volumes." RP at 9 (Dec. 5, 1996). Although the mother is a chronic addict, the court reasoned that her failed attempt at treatment in a program she herself selected was also significant. Her involvement in criminal conduct was a major concern, both the extensive history and the convictions in 1996. The trial court reasoned that parenting skills were not so much the problem as availability, sobriety, stability and consistency for the child. The court determined that nothing could be offered to the mother to assist in correcting these deficiencies, and that there is no likelihood the mother would be able to provide a stable and permanent home for K.S.C. in the near future. The court found: "We have a very clear record here of failure to deal successfully with her drug/alcohol issue, and failure to remove herself from the criminal justice system." Clerk's Papers (CP) at 124.
The mother appealed, and the Court of Appeals Commissioner affirmed. A motion *117 to modify the Commissioner's ruling was denied by a panel of the court. The mother then sought discretionary review.

ANALYSIS
A trial court may order termination of parental rights if the State proves six statutory allegations in RCW 13.34.180 by clear, cogent and convincing evidence and the court finds that termination is in the best interests of the child. RCW 13.34.190; In re Dependency of K.R., 128 Wash.2d 129, 140-41, 904 P.2d 1132 (1995). Clear, cogent and convincing evidence exists when the evidence shows the ultimate fact at issue to be highly probable. In re Dependency of K.R., 128 Wash.2d at 141, 904 P.2d 1132; In re Welfare of Sego, 82 Wash.2d 736, 739, 513 P.2d 831 (1973). The court's factual findings must be upheld if supported by substantial evidence from which a rational trier of fact could find the necessary facts by clear, cogent, and convincing evidence. In re Dependency of C.B., 61 Wash.App. 280, 286, 810 P.2d 518 (1991); RCW 13.34.190. The trial judge has the advantage of having the witnesses before him or her, and deference to the findings is of particular importance in deprivation proceedings. In re Dependency of K.R., 128 Wash.2d at 144, 904 P.2d 1132; In re Welfare of Aschauer, 93 Wash.2d 689, 695, 611 P.2d 1245 (1980).
Under former RCW 13.34.180, as it existed when the termination hearing in this case occurred, the State had to establish:
(1) That the child has been found to be a dependent child under RCW 13.34.030(2); and
(2) That the court has entered a dispositional order pursuant to RCW 13.34.130; and
(3) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency under RCW 13.34.030(2); and
(4) That the services ordered under RCW 13.34.130 have been offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided; and
(5) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. In determining whether the conditions will be remedied the court may consider, but is not limited to, the following factors:
(a) Use of intoxicating or controlled substances so as to render the parent incapable of providing proper care for the child for extended periods of time and documented unwillingness of the parent to receive and complete treatment or documented multiple failed treatment attempts; or
(b) Psychological incapacity or mental deficiency of the parent that is so severe and chronic as to render the parent incapable of providing proper care for the child for extended periods of time, and documented unwillingness of the parent to receive and complete treatment or documentation that there is no treatment that can render the parent capable of providing proper care for the child in the near future; and
(6) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home....
Laws of 1993, ch. 412, § 2.
The mother maintains that the State has failed to prove the allegations in RCW 13.34.180(6).[3] The mother contends that *118 K.S.C. has long been integrated into a guardianship, which the State plans to continue after termination. The mother contends that the State has not proved that a guardianship is a stable and permanent home sufficient to justify termination, and that the State failed to prove continuation of the parent-child relationship diminishes the child's integration into the guardianship she claims is planned. The mother also argues that guardianship is an alternative to termination that must be imposed in this case.
The mother's arguments reflect fundamental errors about the facts in this case and about the governing statutes. First, K.S.C. has never been in a guardianship and there is no basis for the mother's contention that a guardianship is to "continue" following termination. Second, the main focus of the sixth allegation in RCW 13.34.180 is the parent-child relationship and whether it impedes the child's prospects for integration, not what constitutes a stable and permanent home. The State does not have to prove that a stable and permanent home is available at the time of termination. Third, when an order on a petition for termination of parental rights is entered, the question is whether the State has proved the allegations in RCW 13.34.180. Nothing in the statute directs that an assessment must be made of a dependency guardianship under RCW 13.34.231 and .232 as an alternative to termination.
Turning first to the mother's claim that K.S.C. has been in a guardianship, the claim is without factual basis. Nothing in the record shows that a petition for guardianship has ever been filed or that there has ever been any court order establishing a guardianship. Under RCW 13.34.230, any party to a dependency proceeding may petition for a dependency guardianship for a dependent child. K.S.C. is a dependent child. RCW 13.34.231 provides for "the hearing on a dependency guardianship petition" and lists the allegations that must be established under a preponderance of the evidence standard[4] in order for a dependency guardianship to be created. There is no evidence of any petition to create a dependency guardianship, no evidence of any order creating such a guardianship, and no indication that any hearing relating to one has ever been held. Further, under RCW 13.34.232, if the court finds the statutory allegations of RCW 13.34.231 proved, the court shall appoint a guardian and specify the rights and obligations of the guardian, specify appropriate visitation between the parent and the child, and specify the need for any continued involvement of the supervising agency and the nature of that involvement. Dependency review hearing requirements do not apply where a dependency guardianship under RCW 13.34.231 and .232 is established. RCW 13.34.235. Here, nothing shows that K.S.C.'s aunt was appointed as guardian or granted rights and duties of a guardian. Moreover, dependency review hearings were routinely held, thus belying establishment of any guardianship under these statutes. See RCW 13.34.235.
In addition, as to posttermination plans, although the mother claims that the State's plan is a guardianship for K.S.C.,[5] the State correctly points out that approval of a permanent placement was not before the trial court in the termination proceedings. There is also no evidence the State has petitioned for a guardianship. The statute does not indicate that the State must seek approval of a permanent placement at the time of termination. RCW 13.34.180(6) refers to the parent-child relationship diminishing the child's "prospects" of a stable and permanent home, not to certainty of such placement.
*119 While K.S.C.'s aunt testified at the termination hearing that a guardianship was her first preference, she also testified that adoption was something to think about. Her testimony did not foreclose the possibility of her adoption of K.S.C. if parental rights were terminated, nor, more importantly, does it say anything about the State's plans for permanent placement of K.S.C. As the State maintains, the record shows that upon termination of parental rights, the State's goal has been and is adoption of K.S.C. by her aunt.
Factually, there was no dependency guardianship of K.S.C. prior to the termination hearing,[6] and no petition for or approval of a guardianship at the time of or after termination. We therefore decline to consider the mother's arguments which assume such facts. The only argument concerning RCW 13.34.180(6) which remains is the mother's contention that if a party to the action asks that a dependency guardianship rather than termination occur, the court must consider guardianship as an alternative to termination. She maintains that if the requirements of RCW 13.34.231 are satisfied, a dependency guardianship is statutorily mandated. She points out that both the guardianship and termination statutes require a decision in the best interest of the child, and says that 1994 amendments to the guardianship statute mandate a guardianship where there is no showing that continuation of the parent-child relationship is detrimental to the child. She urges that this legislative preference is supported by studies showing benefits of relative guardianships.
Nothing in the termination statutes directs a court to consider a dependency guardianship as an alternative to termination. Instead, when faced solely with a petition for termination of parental rights, the court's inquiry is whether the allegations in RCW 13.34.180 are proved by clear, cogent and convincing evidence, and whether termination is in the best interest' of the child. RCW 13.34.190. If the allegations in RCW 13.34.180 are proved by clear, cogent, and convincing evidence, termination is authorized by statute. Further, proof of the allegation in RCW 13.34.180(6) establishes that continuation of the parent-child relationship will harm the child, and in such circumstances a guardianship under RCW 13.34.231 and .232 (the statutes the mother relies on)[7] would not be an appropriate alternative to termination.
Even if a court is faced with petitions both for termination and for a dependency guardianship under RCW 13.34.231 *120 and .232,[8] the inquiry will be whether the statutory requirements have been satisfied. The standards of proof are different (termination requires proof under the clear, cogent, and convincing standard, while a dependency guardianship requires proof by a preponderance standard), and the allegations differ in that the termination statute requires a showing that continuation of the parent-child relationship clearly diminishes the child's prospects of early integration into a stable and permanent home. The court's obligation, then, will be to determine whether the allegations under either standard have been proven. It may be that neither statute is satisfied.
The 1994 legislative amendments to RCW 13.34.231 do not require a court to consider a dependency guardianship, whether as an alternative to termination or otherwise, where the State has petitioned for termination and no party has petitioned for a dependency guardianship. The 1994 amendments added language identifying the guardianship under RCW 13.34.231 and .232 as a dependency guardianship; provided that if the allegations of RCW 13.34.231 are proved, a dependency guardianship "shall" be created (instead of "may"); and provided that under RCW 13.34.231(6) it must be established that a dependency guardianship rather than termination "or continuation of efforts to return the child to the custody of the parent" is in the best interest of the child (instead of a guardianship rather than termination "or continuation of the child's current dependent status would be in the best interest of the family"). Laws of 1994, ch. 288, § 6. While these changes affect whether a dependency guardianship will be created, they do not demand consideration or creation of a dependency guardianship where there has been no petition for the creation of one.
Contrary to the mother's argument, the trial court here did not err by failing to consider (and order) a dependency guardianship in this case. The State petitioned for termination of parental rights, and no party petitioned for a dependency guardianship. A guardianship was not before the trial court. Moreover, the trial court correctly determined that the State had proved by clear, cogent, and convincing evidence that continuation of the parent-child relationship clearly diminished K.S.C.'s prospects for early integration into a stable and permanent home. Because continuation of the parent-child relationship was harmful to the child, a dependency guardianship under RCW 13.34.231 and .232 could not have been an appropriate alternative to termination in any event.
The mother has moved to strike several portions of the State's supplemental brief. Portions of a brief which contain factual material not submitted to or considered by the trial court should be stricken. Nelson v. McGoldrick, 127 Wash.2d 124, 896 P.2d 1258 (1995). The mother's motion should be granted in part. Appendices B and C are stricken. The mother also complains about statements the State makes that K.S.C. was in foster care, that dependency orders indicate that adoption is the permanent plan, and that K.S.C.'s paternal aunt's testimony leaves open the possibility of adoption and that the aunt is pursuing that course. The first of these statements is not objectionable, because the record indicates K.S.C. was in relative care placement. Insofar as the State refers to Appendices A and B for its statement that adoption is the permanent plan, its statements should be stricken, as well as its statements that the aunt is now pursuing adoption. The mother also complains about a statement that guardianship is not the permanency plan for K.S.C., adoption is. She contends the issue was not litigated below. While permanent placement was not resolved in the termination proceedings, there is evidence supporting the statement and it should not be stricken. Moreover, it is clearly relevant to the mother's arguments.
The mother claims that part of the State's argument about whether the allegation in RCW 13.34.180(6) has been proven should be stricken. While the validity of the argument may be debated, it does not warrant striking. The mother appropriately complains that the State represents that *121 comments of K.S.C.'s uncle regarding the disruptive influence of visitation on the mother's other children concern visitation by both parents, when the comments were actually in the context of discussing visitation by K.S.C.'s father. Although technically the State refers to visitation by "the parents," its clear implication is that the comments refer to the mother. The representations misstate the facts, and should be stricken insofar as they do. However, insofar as the challenged portion refers to the mother's failure to consistently show up for scheduled visitation, it is accurate.
Finally, the mother wants the court to strike a statement that the record demonstrates that K.S.C. does not understand the mother is her mother. There is evidence that K.S.C. knew that petitioner was her mother. There is also evidence, though, that K.S.C. calls her paternal aunt "mom," and that her relationship with her aunt is like that of a mother and daughter. RP at 99-100 (Dec. 3, 1996); RP at 58 (Dec. 4, 1996). The statement is not stricken.
The Court of Appeals is affirmed.
GUY, C.J., and DURHAM, SMITH, JOHNSON, ALEXANDER, TALMADGE, SANDERS and IRELAND, JJ., concur.
NOTES
[1] The court contacted her by telephone the day of trial. She claimed she did not have funds to travel to Seattle for the hearing and had to borrow money for the trip. She did not explain why she could not have made arrangements earlier or at least why she did not contact the court or her counsel, rather than simply failing to appear.
[2] The trial court declined to enter any findings as to possible sexual abuse by Billy Jo due to lack of evidence, but left the issue open for a future continued hearing on termination of Billy Jo's parental rights. Billy Jo's rights were eventually terminated, but this record contains little information about termination of his rights except that he did not appeal termination. Reference to possible sexual abuse is included here to show that even though the mother thought Billy Jo had sexually abused a child, she also thought he should have custody of K.S.C. if she was not granted custody.
[3] The mother argued to the Court of Appeals that RCW 13.34.180(5) had not been proven either, but she does not pursue that claim in briefing before this court. The mother also claims that there is insufficient evidence supporting the finding that necessary services were offered or provided to her as required by RCW 13.34.180(4). She did not raise this issue in her petition for review. In her supplemental briefing she devotes a paragraph to the issue and refers the court to argument in briefing to the Court of Appeals. RAP 13.7(b) provides that where the court accepts review of a Court of Appeals decision, it will review only questions raised in the motion for discretionary review or the petition for review and the answer, unless the court orders otherwise on granting review. Accordingly, we decline to reach the issue.
[4] The Court of Appeals has held the preponderance standard satisfies due process requirements given that a dependency guardianship, as it is now called, is not permanent or irrevocable and does not sever the parent-child relationship. In re Dependency of F.S., 81 Wash.App. 264, 913 P.2d 844 (1996).
[5] Following termination of parental rights, a child may, among other things, be placed for adoption, in foster care, or in a guardianship. However, unlike the situation where parental rights have not been terminated and a dependency guardianship is established under RCW 13.34.231 and .232, a parent cannot seek to terminate any guardianship established after termination of parental rights. See RCW 13.34.200(1) (extinguishing a parent's standing to appear in any legal proceeding concerning the child after termination of parental rights).
[6] The mother's argument based upon In re Welfare S.V.B., 75 Wash.App. 762, 880 P.2d 80 (1994), is therefore misplaced. In S.V.B., the State filed petitions seeking to terminate each parent's rights in three children. The mother voluntarily relinquished parental rights as to two of the children and requested that a guardianship be established as to the third child, "I", with the child's grandmother as guardian. Id. at 766, 880 P.2d 80. The State concurred with the mother's request, and a court-established guardianship was created as to "I". The State advised the trial court that it was seeking only to terminate the father's parental rights, and following the termination hearing the father's rights were terminated as to all the children. On appeal, the Court of Appeals held that as to "I", RCW 13.34.180(6) had not been proven, reasoning that termination of the father's parental rights would not cause the guardianship arrangement to change and would deprive the child of the opportunity for nurturing support and financial support of the father. Unlike the situation in S.V.B., there was no guardianship established for K.S.C., and the case is therefore distinguishable. Because the case is distinguishable, we do not comment on the Court of Appeals reasoning.
[7] The guardianship statutes that the mother cites are RCW 13.34.231-.234. Provisions in these guardianship statutes indicate that they do not involve guardianships which might be created after termination of parental rights. See RCW 13.34.231, .232, .233. Unlike termination of parental rights, which completely and irrevocably eliminates all parental rights, these dependency guardianship statutes contemplate that a parent might seek termination of the guardianship and custody of the child. Under RCW 13.34.233 and RCW 13.34.150, "[a]ny party [,]" including a parent, "may request the court to modify or terminate a dependency guardianship order" and modification or termination can occur only upon a showing of changed circumstances. This is in keeping with the Legislature's intent that a guardianship under RCW 13.34.231 and .232 can provide the parent with the opportunity to take the steps necessary to resume custody of the child in the future. In re Dependency of A.V.D., 62 Wash.App. 562, 570, 815 P.2d 277 (1991).
[8] A hearing on a guardianship under RCW 13.34.231 and .232 occurs only where a party to dependency proceedings petitions for creation of a guardianship. See RCW 13.34.230, .231.