# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Welfare of | ) | No. 75325-8-I |
| | ) | |
| D.W.N., | ) | |
| DOB: 02/12/09 | ) | |
| Minor. | ) | DIVISION ONE |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| DEPARTMENT OF SOCIAL AND | ) | |
| HEALTH SERVICES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHELLE NATIONS, | ) | |
| | ) | |
| Appellant. | ) | FILED: January 23, 2017 |

MANN, J. — After a dependency of more than two years, the juvenile court entered an order terminating the appellant mother's parental rights to her son. The mother challenges the court's finding that all necessary and reasonably available services capable of correcting her parental deficiencies were provided to her as required by RCW 13.34.180(d). Because substantial evidence in the record support's the court's finding, we affirm.

FACTS

Michelle Nations is the mother of D.W.N. who was born on February 12, 2009. In January 2014, based on allegations of parental neglect, substance abuse, and lack of housing, the Department of Social and Health Services (Department) filed a dependency petition. In March 2014, Nations agreed to a dependency and dispositional order for D.W.N. According to the agreed order, D.W.N. was dependent because he had no parent or custodian capable of adequately caring for him. See RCW 13.34.030(6)(c).

The dispositional order required Nations to (1) obtain a substance abuse evaluation and complete recommended treatment; (2) complete a psychological evaluation with a parenting component and to follow any recommendations for further services; (3) participate in random urinalysis testing; (4) participate in mental health services to address ongoing mental health concerns related to parenting and domestic violence; and (5) complete age-appropriate parenting instruction. The agreed dependency order also provided for Nations to have twice weekly supervised visitation with D.W.N.

The Department initially placed D.W.N. in the care of his maternal grandmother. During the approximately six-month period that D.W.N. lived with Nations' mother, Nations visited him. However, two visitation supervisors terminated Nations' visitation contract because she missed too many scheduled visits. A third supervisor terminated her contract because Nations slept through her visits. After the first two supervisors terminated her contracts, Nations requested that the Department initiate new contracts

for her, and the Department did so. Nations did not request a new contract after the third visitation supervisor cancelled the contract.

Lisa Preece was the assigned social worker throughout the dependency. At first, the social worker had regular contact with Nations. To facilitate her compliance with the dispositional order, the social worker met with Nations several times and provided her with a list of the court-ordered services for which the Department had made arrangements. Nations appeared to understand what services were required of her. The social worker gave Nations the opportunity to ask questions about the services and provided her contact information. Early in the dependency, Nations contacted the social worker by telephone.

Nations acknowledged her drug addiction and her need for inpatient substance abuse treatment. The social worker referred Nations to Phoenix Recovery for both a substance abuse evaluation and random urinalysis testing. Although Nations agreed to attend "numerous times," she missed multiple appointments for an evaluation. The social worker advised Nations that because the referral was open, she could go to Phoenix Recovery for an evaluation without a scheduled appointment. Although Nations agreed to do this more than once, she never went. Nations did not submit to any urinalysis testing during the dependency.

Nations also acknowledged that she had experienced trauma and suffered from depression. The social worker specifically explained to Nations both in person and in telephone conversations that the court ordered her to participate in mental health services. Nations expressed no particular resistance to mental health treatment, but nevertheless did not participate.

-3-

To address concerns about Nations' ability to safely parent D.N.W., the social worker referred Nations to a parenting class called "Triple P." Nations failed to complete the class or attend any other parenting training during the dependency.

Although the dispositional order required Nations to obtain a psychological evaluation with a parenting component, the social worker did not refer Nations for that service because she wanted Nations to first obtain a substance abuse evaluation. The social worker testified that she planned to provide a referral for a psychological evaluation upon Nations' completion of inpatient treatment, if such treatment was recommended following a substance abuse evaluation.

Six to eight months after entry of the dependency order, the Department placed D.W.N. in the care of his paternal grandmother and step-grandfather. Several dependency review and permanency planning hearings took place between March 2014 and May 2016. The mother did not attend most of the hearings.

The Department filed a petition to terminate Nations' parental rights in November 2015, alleging that Nations was unable to parent D.W.N. due to her untreated substance abuse, mental health issues, and inability to assess risks to D.W.N. or to meet his developmental needs.

According to the social worker, Nations' parental deficiencies included substance abuse, mental health issues, and the failure to recognize D.W.N.'s need for safety and stability. Both the social worker and the court-appointed Guardian Ad Litem testified that even if Nations immediately began to engage in court-ordered services, it would take approximately a year to complete them and she would not be able to remedy her parental deficiencies within the foreseeable future.

-4-

As of the May 2016 trial on the Department's petition, Nations had not visited D.W.N. in 15 months, nor had she contacted his caregivers or the social worker. Nations had not provided the Department with an address and the social worker did not know where she was living. D.W.N. had been living with his grandparents for more than a year. He was 7 years old, attending first grade, and was doing well in school. His grandparents hoped to adopt him. Nations did not attend the termination trial.

After considering the testimony of the social worker, the Guardian Ad Litem, and the paternal grandmother, as well as several exhibits, the juvenile court found that the Department met its burden of proving the elements of RCW 13.34.180(1) and concluded that Nations was currently unfit to parent D.W.N. The court entered an order terminating Nations' parental rights.[1] Nations appeals.

## ANALYSIS

### I.

"The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). Because of this fundamental liberty interest, the State may terminate parental rights "'only for the most powerful [of] reasons.'" In re Welfare of S.J., 162 Wn. App. 873, 880, 256 P.3d 470 (2011) (alteration in original) (quoting In re Welfare of A.J.R., 78 Wn. App. 222, 229, 896 P.2d 1298 (1995)).

---

[1] Clerk's Papers (CP) at 75-80. In May 2016, D.W.N.'s father relinquished his parental rights. The father is not a party to this appeal.

The juvenile court may order termination of parental rights if (1) the State proves the six statutory elements of RCW 13.34.180 by clear, cogent, and convincing evidence; and (2) the court finds that termination is in the child's best interests. RCW 13.34.190; In re Dependency of K.S.C., 137 Wn.2d 918, 925, 976 P.2d 113 (1999). Clear, cogent, and convincing evidence is evidence that shows the ultimate fact at issue to be highly probable. K.S.C., 137 Wn.2d at 925. We give deference to the trial court in weighing the evidence and witness credibility. In re Welfare of Aschauer, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980). "The court's factual findings must be upheld if supported by substantial evidence from which a rational trier of fact could find the necessary facts by clear, cogent, and convincing evidence." K.S.C., 137 Wn.2d at 925. Evidence is substantial if it is sufficient to persuade a fair-minded person of the truth of the fact at issue. S.J., 162 Wn. App. at 881.

II.

In this appeal, only one of the six statutory elements under RCW 13.34.180(1) is at issue:

> (d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided.

RCW 13.34.180(1)(d).

Nations contends that the record does not support the court's finding that the Department provided all necessary and reasonably available services. This is so, she claims, because the Department failed to offer a psychological evaluation and unreasonably decided to provide this service sequentially to a substance abuse

evaluation and treatment. Nations asserts that an evaluation would have likely led to a recommendation for other services, such as medication management. She further maintains that medication management would have allowed her to manage her depression, and, in turn, would have enabled her to engage in other services.

To terminate parental rights, the State must prove that it offered all necessary services capable of correcting the specific parental deficiencies within the foreseeable future. RCW 13.34.180(1)(d). "The services offered must be tailored to each individual's needs," In re Dependency of T.R., 108 Wn. App. 149, 161, 29 P.3d 1275 (2001), and must be offered in a timely manner. S.J., 162 Wn. App. at 881-83.

It is well settled that the statutory requirement to offer corrective services does not contemplate an entirely one-way process, and "a parent's unwillingness or inability to make use of the services provided excuses the State from offering extra services that might have been helpful." In re Dependency of Ramquist, 52 Wn. App. 854, 861, 765 P.2d 30 (1988). Even where the Department inexplicably fails to offer services to a parent, termination will still be deemed appropriate if the services would not have remedied the parent's deficiencies in the foreseeable future. In re Welfare of M.R.H., 145 Wn. App. 10, 25, 188 P.3d 510 (2008). "Where the record establishes that the offer of services would be futile, the trial court can make a finding that the Department has offered all reasonable services." M.R.H., 145 Wn. App. at 25.

Nations compares the facts of her case to those in S.J. In that case, the State failed to provide needed mental health services, requiring a "sequential approach" in which the mother first had to address her substance abuse problem. S.J., 162 Wn. App. at 881. But in fact, the mother's parenting deficiencies and substance abuse were

related to mental health issues. After failing three times in a year to complete inpatient drug treatment, the mother succeeded soon after receiving mental health services. S.J., 162 Wn. App. at 882.

This case is unlike S.J. for several reasons. First, in S.J., the Department did not offer the mother mental health counseling until eight months after her child was removed from her care. The record here demonstrates that although the Department did not make a referral for a psychological evaluation with a parenting component, the Department did offer Nations mental health treatment without delay for her co-occurring mental health and substance abuse problems. Second, while the mother in S.J. actively engaged in all services offered, faithfully kept her visitation appointments, and implemented suggested parenting skills, Nations failed to engage in any of the services the Department offered during the dependency. During a period of almost two years between March 2014 and May 2016, apart from sporadically visiting D.W.N. in the first six to eight months, Nations took no steps in furtherance of reunification or toward correcting her parenting deficiencies. Thus, even if the Department had failed to offer co-occurring treatment in this case, Nations' unwillingness to engage in any services make it clear such treatment would have been futile. Finally, in contrast to the record in S.J., there is nothing in the record in this case to support the assertion that a lack of mental health treatment—which, in any event, the Department attempted to provide— prevented Nations from addressing her other parental deficiencies.

Under these circumstances, nothing in S.J. required the court to find that the Department failed to offer all necessary services. Clear, cogent, and convincing

evidence supports the court's determination that the Department offered or provided to Nations all necessary services capable of correcting her parental deficiencies.

We affirm the court's order terminating Nations' parental rights to D.W.N.

_____

WE CONCUR:

_____

_____