IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Parental Rights to | ) | No. 34357-0-III |
| | ) | (consolidated with |
| NA.W. | ) | No. 34358-8-III) |
| | ) | |
| ———————————————————— | ) | |
| In the Matter of the Parental Rights to | ) | UNPUBLISHED OPINION |
| | ) | |
| NO.W. | ) | |

PENNELL, J. — A.W. appeals the trial court's order terminating his parental rights

to his two young sons.[1] We affirm.

## FACTS

A.W.'s children were removed from his home after the Department of Social and

Health Services (Department) received a report alleging unsanitary conditions. This was

not A.W.'s first involvement with the Department. Several years earlier, A.W.'s parental

---

[1] The mother's parental rights were also terminated and are not the subject of this
appeal.

rights were terminated as to his two older children. The order of termination identified the cleanliness of the home, A.W.'s fixation on past personal issues and wrongs, and A.W.'s failure to recognize why his children were removed from his care as parental deficiencies. Those concerns mirror the issues here.

During the current dependencies, the Department referred A.W. for a neuropsychological evaluation. Dr. John Christensen conducted the evaluation and diagnosed A.W. with attention deficit hyperactivity disorder (ADHD) and an unspecified neurocognitive disorder where his intellectual abilities are somewhat in the average range but his executive functioning skills are quite low. Dr. Christensen recommended a psychiatric evaluation to assess the need for medication. He also recommended individual therapy as well as in-home assistance to address the state of the home.

Joan Chase provided therapy for A.W. for five months. Ms. Chase agreed with Dr. Christensen's diagnoses. Ms. Chase never went to A.W.'s home but did see photographs. She attempted to provide A.W. with treatment for hoarding but was unable to do so as A.W. was unreceptive. Despite trying essentially every clinical approach to help A.W. gain insight and accountability, Ms. Chase described A.W.'s progress as "[e]ssentially nil." 2 Verbatim Report of Proceedings (Feb. 2, 2016) at 293-94.

Dr. Sean Smitham took over A.W.'s therapy after A.W. expressed a desire for a male therapist. Like Ms. Chase, Dr. Smitham did not go to A.W.'s home. When Dr. Smitham saw photographs of the home, he had significant concerns about A.W.'s perception because A.W. had reported the house was clean. When reviewing the photographs with A.W., A.W. could not recognize the safety issues the home presented. Dr. Smitham also assisted A.W. in creating concrete lists to help A.W. in completing certain tasks around the home, but that strategy proved unsuccessful.

Dr. Smitham disagreed with Dr. Christensen's recommendation for a psychiatric evaluation as he did not believe medication would be helpful. He also did not think A.W. had an issue with hoarding. Dr. Smitham opined that short of an assisted living situation, A.W. would not be able to provide safe housing for his sons. A.W.'s therapy with Dr. Smitham ended when Dr. Smitham changed jobs. Although Dr. Smitham and A.W. had developed a good relationship, Dr. Smitham concluded A.W. had not made significant progress. Dr. Smitham felt that, rather than continuing to work on reunification, A.W. should emotionally prepare himself for the likelihood of losing his children.

Apart from individual therapy, A.W. participated in family therapy and hands-on parenting. He did not progress in either. A.W.'s struggles continued to be rooted in his lack of insight and insistence that he did not need to change.

3

After nearly two years of legal proceedings, the court terminated A.W.'s parental rights to his two sons. A.W. appeals.

## ANALYSIS

*Necessary services*

The principal issue on appeal is whether substantial evidence supports the trial court's finding that the Department offered A.W. necessary reunification services, as required by RCW 13.34.180(1)(d). Our review is deferential. *In re Welfare of L.N.B.-L.*, 157 Wn. App. 215, 243, 237 P.3d 944 (2010). We must affirm so long as the trial court's findings are supported by evidence that is substantial in light of the clear, cogent, and convincing standard of proof. *In re Dependency of K.S.C.*, 137 Wn.2d 918, 925, 976 P.2d 113 (1999).

A.W. claims the Department did not offer him the following services in a timely manner: a psychiatric evaluation, in-home services, and assistance remedying the condition of his home. We address each contention in turn.

*Psychiatric evaluation*

The Department provided a neuropsychological evaluation but not a follow-up psychiatric evaluation. A psychiatric evaluation had been originally ordered, based on the recommendation of Dr. Christensen, to explore the possibility of medication for A.W.'s

4

ADHD. However, Dr. Smitham disagreed with this recommendation. After working with A.W. for several months, Dr. Smitham concluded medication was unnecessary. Although Dr. Smitham largely felt that medication would neither help nor harm A.W., he also stated medication "could" interfere with A.W.'s progress. Ex. P12, P21. Based on Dr. Smitham's testimony, the trial court determined a psychiatric evaluation was no longer a necessary service.

Dr. Smitham's testimony was sufficient to justify the trial court's finding. Dr. Smitham described the reasoning behind his disagreement with Dr. Christensen in detail. He also explained why his ultimate assessment, developed over months of therapy, should be preferred over Dr. Christensen's initial evaluation. We will not disturb the trial court's decision to credit Dr. Smitham's testimony on appeal.

*Hands-on in-home assistance with completing tasks*

A.W. claims the Department did not tailor the services to his needs as it failed to offer him hands-on in-home assistance with completing tasks. Again, his argument is based on a recommendation that had been made by Dr. Christensen.

A.W.'s complaints about the lack of in-home assistance are unpersuasive because the evidence clearly shows such services would not have enabled A.W. to overcome his parenting deficiencies. *In re Welfare of M.R.H.*, 145 Wn. App. 10, 25, 188 P.3d 510

(2008) (The trial court can find the Department offered all reasonable services "[w]here the record establishes that the offer of [other] services would be futile."). The various professionals involved in the dependency consistently found A.W.'s primary problems were lack of insight and resistance to change. Over the course of the current dependencies, as well as the previous ones, A.W. continually failed to recognize the safety concerns in his home and the need for change. Providing in-home assistance would not have remedied these core problems.

*Condition of the home*

Separate from his claim about the lack of in-home skill development, A.W. complains he was never provided assistance with cleaning his home. Specifically, he argues (1) the Department should have contacted the health department about the condition of the home, (2) the Department did not offer any assistance to remedy the unsanitary condition of the home, and (3) the Department did not refer A.W. to any programs to address his hoarding issues. A.W.'s complaints fail for the same reason as his arguments regarding lack of hands-on assistance. The evidence at trial showed A.W. suffered from a perception problem. As Dr. Smitham testified, even had A.W. been provided assistance in cleaning up his home or treatment for hoarding, that would not have remedied the problem.

It bears emphasis that while the condition of the home led the Department to intervene in A.W.'s life, this was not the ultimate basis for termination. The garbage and the clutter were symptoms of A.W.'s mental health problems. They were not the ultimate barrier to reunification. By providing A.W. mental health counseling, targeted at his individual needs, the Department offered all reasonably necessary services. It is simply unfortunate that A.W. failed to progress.

*Other elements*

A.W.'s final argument is that because the Department did not offer or provide the aforementioned necessary services, the trial court prematurely found (1) he was unfit to parent, (2) there was little likelihood his parental deficiencies would be remedied in the near future, (3) the continuation of the parent-child relationship diminished prospects for early integration into a permanent home, and (4) termination was in his sons' best interests.

Given our disagreement with A.W.'s assessment of the Department's services, we disagree with his contention. Because A.W. does not argue the aforementioned four findings are unsupported by substantial evidence but rather hinges his argument on the assumption he did not receive all necessary services, this court need not analyze each finding individually.

7

No. 34357-0-III; 34358-8-III
*In re Parental Rights to Na.W. and No.W.*

## CONCLUSION

The trial court's decision is affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Pennell, J.

WE CONCUR:

_____     _____
Lawrence-Berrey, A.C.J.                          Siddoway, J.

8