IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Parental Rights to | ) | No.  35778-3-III |
| | ) | (consolidated with) |
| M.M.B. and R.J.B.[†] | ) | No.  35779-1-III |
| | ) | No.  35780-5-III |
| | ) | No.  35781-3-III) |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |

LAWRENCE-BERREY, C.J. — Yoci Bustos and Randy Godinez appeal after the trial court terminated their parental rights to M.M.B. and R.J.B.  They argue the trial court erred by finding (1) that all necessary services were expressly and understandably offered or provided, (2) there was little likelihood conditions would be remedied so the children could be returned to them in the near future, and (3) it was in the children's best interests to terminate their parental rights.  We affirm.

---

[†] To protect the privacy interests of the minor children, we use their initials throughout this opinion.  General Order for the Court of Appeals, *In re Changes to Case Title*, (Aug. 22, 2018), effective Sept. 1, 2018.

FACTS

Yoci Bustos and Randy Godinez are the biological parents of M.M.B. (M.B.) and R.J.B. (R.B.). In 2013, M.B.-R, who is not an issue in this appeal, had fractures in both legs that were believed to be caused by domestic violence between Ms. Bustos and Mr. Godinez. M.B. was born in February 2014 and was placed with Mr. Godinez due to the prior incident with M.B.-R. In October 2014, there was another report of domestic violence and the Department of Social and Health Services (Department) removed M.B. Around this time, Ms. Bustos pleaded guilty to assault of M.B.-R in the third degree. Ms. Bustos began her 10 month jail sentence in December 2014.

In January 2015, both parents agreed to dependency and disposition of M.B. The order required Ms. Bustos to participate in mental health therapy and parenting education. Mr. Godinez was required to participate in a chemical dependency evaluation and treatment, a domestic violence evaluation, parenting education, and a psychological evaluation.

In July 2015, during Ms. Bustos's incarceration, R.B. was born. The Department removed R.B. immediately. In September 2015, both parents agreed to dependency and disposition of R.B. The services ordered were largely the same as before except Ms.

Bustos was required to do domestic violence counseling and it recommended family therapy after disposition for both parents.

*Parenting Services*

Ms. Bustos was referred to Parents and Children Together (PACT) in October 2013. PACT is a hands-on parenting program that teaches parents parenting skills and works with them on those skills. Mr. Godinez joined the program in January 2014. In December 2014, Ms. Bustos removed herself from PACT because of her upcoming jail sentence.

In March 2015, Mr. Godinez was removed from the PACT program because of six unexcused absences. Mr. Godinez asked to be re-enrolled in PACT in June 2015, but he never showed up for class, so he was withdrawn again in July 2015. Mr. Godinez was able to complete the Positive Parenting Program.

When the case transferred to social service specialist Heather Schrader, Ms. Bustos and Mr. Godinez were able to successfully complete the parenting education classes. Ms. Schrader had no concerns with either parents' conduct during visitations with M.B. and R.B.

*Mental Health Treatment*

Dr. Paul Wert performed a psychological evaluation on Ms. Bustos in May 2013. He diagnosed her with some personality disorders and believed that she could not provide a consistent and safe parenting environment because of her issues with domestic violence. Dr. Wert recommended mental health therapy.

Ruby Padilla was the social worker assigned to Ms. Bustos and Mr. Godinez from March 2015 until January 2016. During this time, Ms. Bustos was released from jail, and Ms. Padilla sent referrals for PACT and Social Treatment Opportunity Program (STOP). STOP has drug and alcohol counseling as well as domestic violence counseling.

In August 2016, Ms. Bustos was referred to Dr. Terri Greer. Dr. Greer does mental health evaluations and assessments and has specialized training in domestic violence issues. Ms. Bustos asserted that she did not need counseling, but Dr. Greer was directed to focus on and address her domestic violence issues. After the initial assessment, Dr. Greer believed that Ms. Bustos needed more therapy. However, Ms. Bustos was guarded and resistant. Dr. Greer was only able to complete three sessions with Ms. Bustos. Ms. Bustos was not engaged, she continued to assert she did not need counseling, and she stated that there were no problems with domestic violence. Dr. Greer

had grave concerns about reuniting the children with Ms. Bustos while her domestic violence issues went unaddressed.

Dr. Scott Mabee performed the psychological evaluation for Mr. Godinez in October 2016. Dr. Mabee diagnosed Mr. Godinez with two personality disorders and a chemical dependency disorder. Dr. Mabee recommended mental health counseling, a chemical dependency assessment, and family therapy. Dr. Mabee believed that it would be more efficient and effective for Mr. Godinez to address his mental health and substance abuse problems first. Mr. Godinez engaged in two mental health sessions before being discharged for lack of attendance. He has since re-engaged.

*Family Therapy*

Lisa Briscoe, a family therapist, received a referral from the Department in May 2016 for Ms. Bustos and Mr. Godinez. During the assessment, Ms. Bustos's demeanor was very timid and cautious, and she would look to Mr. Godinez before answering direct questions—as if asking for permission to speak. Mr. Godinez would interrupt Ms. Bustos, not let her answer questions, or change the subject. Both parents admitted to incidents of physical fighting. After the initial assessment, Ms. Briscoe did not recommend family therapy because she suspected Ms. Bustos was afraid to tell the truth for her own safety. Before family therapy was appropriate, Ms. Briscoe recommended

parenting education, mental health therapy, and one year of domestic violence treatment for Mr. Godinez.

### *Domestic Violence Services*

Ms. Bustos did not successfully complete domestic violence services because of her inability to address the issues with Dr. Greer.  Ms. Schrader believed that this is Ms. Bustos's only barrier to returning the children to her.

In 2015, Robert Lagerquist recommended one year of domestic violence treatment through STOP for Mr. Godinez.  Mr. Godinez failed to complete this.  STOP performed another evaluation with Mr. Godinez in July 2016 and recommended one year of domestic violence treatment.  During this evaluation, Mr. Godinez identified incidents of domestic violence problems with Ms. Bustos and the children.  He self-reported that he yells, shouts, name calls, insults, puts down, and breaks objects during disagreements with Ms. Bustos.  Mr. Godinez began sessions on August 5, 2016.  Sessions were once a week for the first six months.  Mr. Godinez only showed up seven or eight times in the first six months.  After January 25, 2017, he stopped attending sessions altogether.

### *Substance Abuse Treatment*

Ms. Bustos does not have a substance abuse problem—it is not a barrier to returning her children.

Mr. Godinez was first provided chemical dependency services with Mr. Lagerquist through STOP in 2015. Mr. Godinez then received a chemical dependency evaluation with Grant County Prevention and Recovery Center (Grant County PARC) in February 2015. Mr. Godinez was diagnosed with cannabis dependence. Intensive outpatient (IOP) therapy was recommended. Grant County PARC has IOP, but Mr. Godinez did not engage in those services.

In November 2015, Mr. Godinez's Department social worker at the time, Ms. Padilla, sent another referral to STOP. Another evaluation was conducted by Grant County PARC in December 2015. Mr. Godinez self-reported that he last used marijuana two weeks prior to the evaluation. However, his urinalysis suggested that was an untruthful answer. Mr. Godinez was offered another assessment when he was ready to be honest. The file was closed in early 2016. There was no evidence that Mr. Godinez ever attempted to get a new evaluation.

Ms. Schrader also referred Mr. Godinez to chemical dependency treatment. In May 2017, STOP performed another evaluation on Mr. Godinez and diagnosed him with mild alcohol use disorder and severe cannabis use disorder. STOP again recommended IOP. IOP was scheduled for about two months, with three hour sessions three times per week and then continuing ongoing care afterward for about one year. STOP allows

patients to use marijuana while doing IOP under certain circumstances. Mr. Godinez was allowed to use marijuana during IOP if it was consumed via oils or edibles. Mr. Godinez did not abide by these rules. Mr. Godinez completed his initial intake appointment and about eight IOP sessions before he stopped attending.

### *Termination Trial*

Linda Wirtz, a mental health counselor who practices in family therapy, evaluated Ms. Bustos and Mr. Godinez. She testified that when confronted, Ms. Bustos denied any domestic violence. Ms. Wirtz noted that the children were not attached to Ms. Bustos and Mr. Godinez as normal children would be to their parents. She noticed that M.B. had extreme anxiety. Ms. Wirtz believed the home was not safe because Ms. Bustos did not understand the effects of domestic violence on the children. She testified that the children need time to heal and learn to have appropriate relationships with caregivers and adults. She also said the time for permanency for M.B. and R.B. is now. She stated that in cases where visitation has lasted for years, it is very hard on the children because they are conflicted and confused, and they do not have a sense of permanency.

At trial, Ms. Schrader testified that Mr. Godinez has simply not completed services to have his children returned. He has not completed domestic violence or chemical dependency treatment. He continues to state that he does not need chemical dependency

8

treatment. Ms. Schrader further testified that Ms. Bustos cannot remedy her deficiencies because she still believes domestic violence is not an issue in the relationship. In Ms. Schrader's opinion, neither parent has made substantial progress in their treatments; the assessments are the same as when they first started. She further testified that if both parents engaged in treatment immediately, Mr. Godinez would need one year of chemical dependency treatment and domestic violence treatment while Ms. Bustos would need one year of domestic violence treatment. Ms. Schrader believed that is too long—M.B. and R.B. need permanency now—they have been out of the home for years and cannot wait for Ms. Bustos and Mr. Godinez to correct their deficiencies.

Matthew Boyce, guardian ad litem for M.B. and R.B., testified that the parental rights should be terminated. In his opinion, this is because Mr. Godinez and Ms. Bustos have not completed the required services, the children are very young and need permanency now, this has been going on for years, and the children do not have time to wait longer. Mr. Boyce believes the current caregivers are an appropriate placement and there is a bond there.

Danielle Wilson, the current foster mother of M.B and R.B, testified that M.B. has been in her care for three years and R.B. since he was two days old. If given the

opportunity, she is willing to adopt them both.  She stated that both the children do well in the home.

The trial court terminated Ms. Bustos's and Mr. Godinez's parental rights to M.B. and R.B. on November 29, 2017.  Both parents appealed.

ANALYSIS

A.    ALL NECESSARY SERVICES WERE EXPRESSLY AND UNDERSTANDABLY OFFERED OR PROVIDED

Both Ms. Bustos and Mr. Godinez contend the Department did not offer or provide them with continuing parenting education, mental health therapy, and family therapy. They argue the failure to provide these services precluded the trial court from finding that all necessary services were provided.  We disagree.

Parents have a fundamental liberty interest in the care, custody, and companionship of their children.  *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982).  To deprive a parent of this fundamental right is a two-step process.  *In re Welfare of A.B.*, 168 Wn.2d 908, 911, 232 P.3d 1104 (2010).  First, the Department must prove the six termination factors set forth in RCW 13.34.180(1) by clear, cogent, and convincing evidence.  *Id.* at 911-12.  If that is satisfied, the court then determines whether by a preponderance of the evidence, termination is in the best interests of the child.  *In re Dependency of K.N.J.*, 171 Wn.2d 568, 576-77, 257 P.2d 522

10

(2011). The trial court is afforded great deference on review. *In re Dependency of K.S.C.*, 137 Wn.2d 918, 925, 976 P.2d 113 (1999).

This court reviews a trial court's decision on any of the six termination factors for substantial evidence. *In re Parental Rights to B.P.*, 186 Wn.2d 292, 313, 376 P.3d 350 (2016). The trial court's findings "must be upheld if supported by substantial evidence from which a rational trier of fact could find the necessary facts by clear, cogent, and convincing evidence." *In re Welfare of M.R.H.*, 145 Wn. App. 10, 24, 188 P.3d 510 (2008). Clear, cogent, and convincing evidence means "highly probable." *Id.*

Under the fourth termination factor, the Department must provide "all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future." RCW 13.34.180(1)(d). "A service is 'necessary' if it is needed to address a condition that precludes reunification of the parent and child." *In re Parental Rights to I.M.-M*, 196 Wn. App. 914, 921, 385 P.3d 268 (2016) (citing *In re Welfare of C.S.*, 168 Wn.2d 51, 56 n.3, 225 P.3d 953 (2010)). "'Where the record establishes that the offer of services would be futile, the trial court can make a finding that the Department has offered all reasonable services.'" *C.S.*, 168 Wn.2d at 56 n.2 (quoting *M.R.H.*, 145 Wn. App. at 25). "The provision of services is futile where a parent is

unwilling or unable to participate in a reasonably available service that has been offered

or provided." *In re Parental Rights to K.M.M.*, 186 Wn.2d 466, 483, 379 P.3d 75 (2016).

### 1. Continued Parenting Services

Both parents contend that parenting services was a necessary treatment that the

Department stopped providing to them. We disagree.

Ms. Bustos and Mr. Godinez fail to realize that the Department must only provide

"all necessary services . . . capable of correcting the parental deficiencies within the

foreseeable future." RCW 13.34.180(1)(d). "A service is 'necessary' if it is needed to

address a condition that precludes reunification of the parent and child." *I.M.-M.*, 196

Wn. App. at 921 (citing *C.S.*, 168 Wn.2d at 56 n.3). Simply put, Ms. Bustos and Mr.

Godinez completed parenting education and it was no longer a barrier to reunification.

The Department had no obligation to continue to provide this service.

Ms. Bustos began parenting education services through PACT, but then stopped to

serve her jail sentence. However, Ms. Bustos successfully completed parenting education

classes later on. Ms. Schrader had no concerns with Ms. Bustos's conduct during

visitations. Her parenting skills were not a barrier for returning the children.

Mr. Godinez began parenting education services and then was removed for

multiple absences. He asked to be re-enrolled again, but failed to make any of the

sessions.  Finally, Mr. Godinez was able to complete the Positive Parenting Program.  Ms. Schrader testified that Mr. Godinez successfully completed the required parenting education classes.  Ms. Schrader had no concerns with Mr. Godinez's conduct during visitations.

Parenting services was not a service that was further required to reunify Ms. Bustos, Mr. Godinez, and their children.  Both parents completed the required classes and it was no longer a barrier to reunification.  Therefore, the Department had no obligation to continue to offer those services.

### 2.    *Mental Health Treatment*

Both parents contend that mental health treatment was a necessary service that was not provided to them.  We disagree.  Mental health treatment was indeed a necessary service, but it was provided to both Ms. Bustos and Mr. Godinez.

Ms. Bustos was referred to Dr. Greer who specializes in mental health evaluations, assessments, and domestic violence issues.  Ms. Bustos continuously reiterated that she did not need counseling.  Ms. Bustos was guarded and resistant.  Ms. Bustos only completed three sessions with Dr. Greer.  Ms. Schrader testified that this is the barrier to Ms. Bustos getting her children back.  The evidence is clear: mental health treatment was ordered and necessary, but Ms. Bustos failed to complete it.

Mr. Godinez had a psychological evaluation in October 2016 by Dr. Mabee. Dr. Mabee recommended mental health counseling. Mr. Godinez attended two sessions before he was discharged for lack of attendance. Ms. Schrader has testified that he has re-engaged in mental health counseling—showing that this service was still provided by the Department.

### 3. *Family Therapy*

Both parents contend that family therapy was a necessary service that was not provided. We disagree. Family therapy was provided to both Ms. Bustos and Mr. Godinez.

Ms. Bustos and Mr. Godinez went to a family therapist, Ms. Briscoe, in May 2016. However, during the assessment, Ms. Briscoe noticed that Ms. Bustos's demeanor was very timid and cautious, and she would look to Mr. Godinez before answering direct questions—as if asking for approval. Mr. Godinez would also interrupt Ms. Bustos, not let her answer questions, or change the subject. Also during the assessment, both parents admitted to incidents of physical fighting. All of this concerned Ms. Briscoe, and she did not recommend further family therapy. Ms. Briscoe believed it would be counterproductive because Ms. Bustos would not meaningfully answer or participate because she was fearful for her own safety. Ms. Briscoe reasoned that mental health

therapy, parenting education, and one year of domestic violence treatment for Mr. Godinez was necessary before the couple could engage in family therapy.

As shown, both parents completed parenting education. However, Ms. Bustos failed to complete mental health treatment. Mr. Godinez also failed to complete mental health treatment. Mr. Godinez failed to complete domestic violence therapy. With the parents' inability to complete mental health treatment and domestic violence therapy—services that were prerequisites to family therapy—the record shows that the provision of family therapy services would have likely been futile because of their inability to complete the other services provided to them.

All of the necessary services to reunify Ms. Bustos, Mr. Godinez, and their children were provided by the Department. Ms. Bustos and Mr. Godinez completed parenting classes and it was no longer a factor preventing reunification. Mental health treatment and domestic violence treatment were both provided to Ms. Bustos and Mr. Godinez. Yet, they failed to complete these services. These services were prerequisites to family therapy. Without their completion, family therapy was likely futile. The Department met its burden.

  B.  LITTLE LIKELIHOOD THAT CONDITIONS WOULD BE REMEDIED SO THE
     CHILDREN COULD BE RETURNED TO THE PARENTS IN THE NEAR FUTURE

Ms. Bustos and Mr. Godinez contend that the trial court erred by finding the

conditions were not likely to be remedied in the near future to enable reunification.  We

disagree.

This court reviews a trial court's decision on any of the six termination factors for

substantial evidence.  *B.P.*, 186 Wn.2d at 313.  The trial court's findings "must be upheld

if supported by substantial evidence from which a rational trier of fact could find the

necessary facts by clear, cogent, and convincing evidence."  *M.R.H.*, 145 Wn. App. at 24.

 Clear, cogent, and convincing evidence means "highly probable."  *Id.*

The fifth termination factor requires the Department to establish:

> That there is little likelihood that conditions will be remedied so that the
> child can be returned to the parent in the near future.  A parent's failure to
> substantially improve parental deficiencies within twelve months following
> entry of the dispositional order shall give rise to a rebuttable presumption
> that there is little likelihood that conditions will be remedied so that the
> child can be returned to the parent in the near future.

RCW 13.34.180(1)(e).  "What constitutes 'near future' depends on the age of the child

and the circumstances of the child's placement."  *In re Welfare of C.B.*, 134 Wn. App.

942, 954, 143 P.3d 846 (2006).  For a younger child, the "near future" is shorter than it is

16

for an older child. *Id.* The trial court is afforded great deference on review. *K.S.C.*, 137 Wn.2d at 925.

M.B. was removed in October 2014 and both parents agreed to a dependency and a dispositional order in January 2015. The dispositional order required Ms. Bustos to complete mental health therapy treatment, among other things. Mr. Godinez was required to complete a chemical dependency evaluation and treatment, and domestic violence treatment. R.B. was removed two days after birth in July 2015. Both parents agreed to dependency of R.B. and a dispositional order in September 2015. This order added domestic violence counseling for Ms. Bustos and family therapy after disposition for both parents.

Here, the parents' dispositional orders were entered 31 months (for M.B.) and 23 months (for R.B.) before the termination trial, and the parents still had not substantially corrected their deficiencies. The rebuttable presumption against the parents arises because the Department has shown that all necessary services reasonably capable of correcting parental deficiencies have been clearly offered or provided. There is no reason to believe that the parents would correct their parental deficiencies in the near future, given their lack of progress. This is especially true given the unrebutted testimony that the near future for the young children "is now." We conclude there is substantial

evidence from which a trier of fact could find the presence of this disputed factor proved

by clear, cogent, and convincing evidence.

    C.       TERMINATION OF PARENTAL RIGHTS IS IN THE BEST INTERESTS OF THE
             CHILDREN

Both Ms. Bustos and Mr. Godinez contend that termination of their parental rights

was not in the best interests of the children.  We disagree.

If the six factors under RCW 13.34.180(1) are established by clear, cogent and

convincing evidence, the court can terminate a parent-child relationship if termination is

in the best interests of the child.  RCW 13.34.190(1)(b); *A.B.*, 168 Wn.2d at 911; *K.N.J.*,

171 Wn.2d at 576-77.  The Department must show termination is in the child's best

interests by a preponderance of the evidence.  *A.B.*, 168 Wn.2d at 912.  We afford the trial

court great deference on review.  *K.S.C.*, 137 Wn.2d at 925.

The Department showed termination was in M.B.'s and R.B.'s best interests by a

preponderance of the evidence.  M.B. had been in the care of Ms. Wilson for three years

and R.B. for over two years.  Both children were well adjusted in the home because they

had been there so long, and Ms. Wilson was willing to adopt them both.

Mr. Boyce also believed that the parental rights should be terminated.  He stated

the children are very young, need permanency now, and do not have the ability to wait a

18

few more years. He testified that the children have bonded with Ms. Wilson and it is an appropriate placement.

Ms. Schrader believed that even if Ms. Bustos and Mr. Godinez engaged in treatment right now and did not fail, it would be at least another year before reunification was considered. In her opinion, that is too long for M.B. and R.B. to wait. She testified that M.B. and R.B. need permanency now and cannot wait any longer for Ms. Bustos and Mr. Godinez.

Ms. Wirtz testified that without the domestic violence treatment, the home was not safe for M.B. and R.B. She testified that in cases where visitation has lasted for years, it is very hard on the children because they are confused and conflicted, and they do not have a sense of permanency. She stated that the time for permanency is now.

Ms. Bustos and Mr. Godinez have attempted to rebut this evidence by asserting that they each have a bond with the children and there is a bond with their family. While this may be true, their evidence is substantially outweighed by the evidence proffered from the Department.

We agree with the trial court's decision that termination of Ms. Bustos's and Mr. Godinez's parental rights of M.B. and R.B. was in the best interests of the children. Both parents had years to correct parental deficiencies they were aware of from the beginning.

They both failed to do so. Both children have been in the same home for years—M.B. for three years and R.B. for two years. They deserve permanency. It is unfair to keep them in limbo for more years so Ms. Bustos and Mr. Godinez can attempt to complete services they have failed before. Both children are well adapted to their foster home, and their foster mother is willing to adopt them both. Termination was in their best interests.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Korsmo, J.

Pennell, J.